**UNITED STATES of America,
Petitioner,**

v.

**AERO–MAYFLOWER TRANSIT CO., et
al., Respondents.**

Misc. No. 86–281.

United States District Court,
District of Columbia.

Oct. 31, 1986.

Joan E. Hartman, and on brief, Richard K. Willard, Asst. Atty. Gen., Michael F. Hertz and Robert L. Ashbaugh, Dept. of Justice, Joseph E. DiGenova, U.S. Atty., and John Bates, Asst. U.S. Atty., Washington, D.C., for petitioner.

James A. Calderwood, Edward J. Kiley, Washington, D.C., Lawrence E. Dube, Jr., Baltimore, Md., for respondents Aero Mayflower Transit Co., Air Land Fowarders— Suddath, Inc., Crest-Mayflower Forwarders, Inc., Mayflower Intern. Forwarding, Inc., Suddath Van Lines, Inc., United Van

Lines, Inc., and Vanguard Freight Forwarders, Inc.

William L. Gardner, Joseph Brooks, Washington, D.C., for respondents Allied Van Lines, Inc., Allied Freight Forwarding, Inc., and Allied Intermodal Forwarding, Inc.

Thomas M. Auchincloss, Jr., Leo C. Franey, Washington, D.C., for respondents Bekins Intern. Lines, Inc. and Bekins Van Lines Co.

CHARLES R. RICHEY, District Judge.

Before this Court is the United States' petition for summary enforcement of administrative subpoenae and respondents' motion to quash the subpoenae or for leave to take discovery. After thoroughly considering the able oral and extensive written arguments, as well as the many supporting affidavits, this Court concludes that respondents have not sustained their heavy burden of proof. In consequence, the Court must order enforcement of the subpoenae forthwith.

## BACKGROUND

The Antitrust Division of the Department of Justice has been investigating alleged anti-competitive practices in the moving and storage industry for at least three years. *Memorandum in Support of Petition of the United States for Summary Enforcement of Administrative Subpoenas* (hereafter Petitioner's Memorandum) 5 n. 1. These investigations have produced five indictments and one prosecution by information of local moving and storage companies and their principals. *Id.* They have not, however, so far produced a civil or criminal antitrust action against respondents.

In September, 1985, the Office of the Inspector General of the United States Department of Defense initiated its own investigations of possible anticompetitive activity in "certain industries" that contract with DOD. *Affidavit of Michael C. Eberhardt, Assistant Inspector General for Criminal Investigation Policy and Oversight, Department of Defense* (hereafter

"Eberhardt Affidavit") ¶ 6. Through this project, the Inspector General concluded that its office should investigate practices in the moving and storage industry. *Id.*

There were two bases for this decision. For one, the indictments delivered by the Antitrust Division focused on price-fixing in moving and storage of goods for military personnel at Fort Jackson, South Carolina. *Eberhardt Affidavit* ¶ 11. Moreover, an August 1985 study by a team of Defense Department economists, later supplemented with a more detailed analysis by the same group, indicated that the rates paid by the Department of Defense for all moving and storage services, some $432 million each year, were consistent with the possibility of price-fixing and other collusive activity. *Id.*

Sometime that fall, the Antitrust Division of the Department of Justice and the Federal Bureau of Investigation invited the DOD Inspector General to participate in a joint investigation to detect price-fixing in Defense Department contracts for moving and storage services. *Id.* at ¶ 7. The joint investigation began during the winter of 1985–86. Pursuant to that investigation, on April 10, 1986, the DOD Inspector General signed 377 identical subpoenae to companies in the household goods moving industry. *Id.* 102 of these subpoenae were to interstate van lines, including respondents. The remainder were to local agents of those lines. *Id.* The subpoenae ordered the companies to produce documents concerning price-setting and performance of transport and storage contracts with the Department of Defense.

Respondent moving and storage companies informed the Inspector General's office that they would not comply with the subpoenae. *Id.* at Exhibits 4–6. On August 14, 1986, the government petitioned for summary enforcement of the administrative subpoenae. Respondents thereupon moved to quash the subpoenae or, in the alternative, for limited discovery to investigate the propriety of the government's subpoenae.

Respondents argue that the DOD subpoenae were issued for an improper purpose and exceed the subpoena power authorized by Congress. They also claim that, even if the Court is not persuaded that the subpoenae are invalid, the evidence so far adduced suggests a possibility of wrongdoing strong enough to entitle respondents to an evidentiary hearing and discovery about the legitimacy of the subpoenae. Finally, respondents Bekins International Lines and Bekins Van Lines claim that the DOD subpoenae are unconstitutional.

## THE PURPOSE OF THE SUBPOENAE WAS PROPER.

This Court must order production of material sought by an Inspector General unless his subpoena is "plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of its duties...." *See, Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943) (standard enunciated); *see also, United States v. Morton Salt Co.* 338 U.S. 632, 642–43, 70 S.Ct. 357, 363–64, 94 L.Ed. 401 (1950); *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *Federal Election Commission v. Committee to Elect Lyndon LaRouche,* 613 F.2d 849, 862 (D.C.Cir. 1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980). Respondents argue that the DOD investigation is merely a smokescreen to obtain information for the Justice Department and therefore the subpoenae serve no lawful purpose of the DOD Inspector General. The Court cannot agree.

For one, the subpoenae and investigation are well within the Inspector General's powers. A short explication of the legislative history and statutory language makes this clear.

Designed to attack a perceived epidemic of waste, fraud, and abuse in federal agencies and programs, the Inspector General Act of 1978 centralized audit and investigative functions within fifteen federal departments and agencies under one official, an Inspector General. S.Rep. No. 1071, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Ad.News 2676–79; 5 U.S.C. app. §§ 2, 4. While the Department of Defense was excluded from the 1978 Act, by 1982 Congress was convinced that DOD would benefit from centralization of its large investigative and audit staffs. Consequently, the Defense Authorization Act of 1982 amended the Inspector General Act of 1978 to create an Inspector General within the Department of Defense. Pub.L. No. 95–452, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2676.[1]

The legislative history of the Inspector General Act and the language creating the DOD Inspector General demonstrate beyond cavil that chief among the "functions assigned" by the Act is "... the prevention and detection of waste, fraud, and abuse" and conduct of appropriate investigations into suspected misfeasance. 5 U.S.C. app. § 8(c)(1), (2); S.Rep. 1071, 1978 U.S.Code Cong. & Ad.News at 2676, 2681–82. Economists' findings that pricing patterns in over $430 million of contracts suggest collusive activity, especially when coupled with indictments of some contractors for price-fixing, clearly support an Inspector General investigation into the suspect activity.

Only if the Inspector General's investigation is a sham could respondents sustain their argument. But the evidence does not clearly support such a claim.

Respondents make much of the unprecedented breadth of the Inspector General's investigation. *See, Aero-Mayflower Memorandum in Opposition to Petition for Summary Enforcement of Adminis-*

1. The 1982 Act established for the Defense Department an Inspector General whose powers and duties differed in some respects from those assigned to other agencies. The primary difference is a lesser degree of centralized authority. See, 5 U.S.C. app. §§ 8(c), 9(c); *United States v.* *Westinghouse Electric Corp.,* 788 F.2d 164, 165–66 (3d Cir.1986). In matters at issue in the instant case, however, the Defense Department's Inspector General powers mirror those established in the 1978 Act.

*trative Subpoenas* 26–27. They invite the Court to infer impropriety from the fact that the DOD Inspector General issued more subpoenae to moving and storage companies on April 10, 1986, than his office issued in total from 1982 until March, 1986. *Id.* Respondents' figures prove only that DOD had never before undertaken so massive an investigation. This Court can see no impropriety in an official's decision to abandon a pattern of restraint and exercise the full powers of his office, especially given the quantum of evidence supporting a comprehensive investigation of the moving and storage industry.

Moreover, this Court is not persuaded that the type of cooperation between the DOD Inspector General and the Justice Department of which respondents complain is prohibited. Respondents allege that case law bars transfer of Inspector General-gathered information to another agency. That line of cases, however, is not applicable to the situation at bar.

Those cases prohibit the Internal Revenue Service from using its subpoena power solely to unearth evidence of criminal conduct and thereby further a Justice Department investigation. *See, United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *United States v. Genser,* 595 F.2d 146 (3d Cir.), *cert. denied,* 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979); *United States v. Garden State National Bank,* 607 F.2d 61 (3d Cir.1979); *United States v. Kis,* 658 F.2d 526 (7th Cir.1981), *cert. denied sub nom. Salken v. United States,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). The principles governing these cases, however, are specific to IRS subpoenae.

■ The purpose of IRS investigations is not to prosecute delinquent payors but to procure tax payments. *United States v. Security Bank and Trust Co.,* 661 F.2d 847, 850 (10th Cir.1981). Accordingly, the I.R.S. is *statutorily prohibited* from continuing civilly once the Justice Department has begun a criminal investigation. I.R.C. § 7122(a); *United States v. Art-Metal-U.S.A., Inc.,* 484 F.Supp. 884, 886 (D.N.J.

1980). No such bar applies to an Inspector General.

■ For one, the likelihood or possibility of a criminal investigation does not bar enforcement of a subpoena issued by an Inspector General in connection with civil proceedings. *Id.* at 887. Respondents have offered no proof that the Justice Department has embarked upon a criminal investigation; certainly, no indictments have been returned against respondents. Absent a formal decision to prosecute, an agency subpoena for which there is a demonstrable civil purpose is enforceable. *See, Securities and Exchange Commission v. Dresser Industries, Inc.,* 628 F.2d 1368 (D.C.Cir.) (en banc), *cert. denied,* 449 U.S. 943, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). As this Court has made clear, the DOD Inspector General had such a "demonstrable civil purpose" when he issued the contested subpoenae.

Moreover, the Inspector General Act itself contemplates Justice Department use of information generated by Inspector General subpoenae. The Inspector General is charged with "coordinat[ing] relations" with other federal agencies, including the Department of Justice, with respect to "the identification and prosecution of participants in ... fraud or abuse." 5 U.S.C. app. § 4(a)(4)(B). Such agency communication with prosecutors is precisely the kind of cooperation that an efficient government should encourage. *Securities and Exchange Commission v. Dresser Industries,* 628 F.2d at 1387.

It may be that respondents fear use of the subpoenaed material in some future administrative action. If so, the proper time for them to raise objections and substantive defenses to use of the material would be in that enforcement effort. *Federal Trade Commission v. Texaco,* 555 F.2d 862, 879 (D.C.Cir.) (en banc), *cert. denied sub nom. Standard Oil Co. v. Federal Trade Commission,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977). Such concerns are premature at this threshold stage of the proceedings.

It is worth mentioning that respondents have not claimed that the subpoenaed information undermines their privilege against self-incrimination or exceeds the scope of legitimate discovery under Fed.R.Crim.P. 16(b). This Court will not assume that the documents might incriminate respondents, or fall outside the legitimate scope of discovery, in some future prosecution. Without even an assertion that a Fifth Amendment privilege is threatened or that Rule 16(b) has come into effect, this Court cannot speculate on the implications of the materials' release. *Securities and Exchange Commission v. Dresser Industries*, 628 F.2d at 1376.

### THE SUBPOENAE ARE CONSISTENT WITH THE POWER AUTHORIZED BY CONGRESS.

Respondents also argue that, regardless of the legitimacy of DOD's investigation, the Inspector General exceeded his powers when he issued the contested subpoenae. The Court disagrees.

Perhaps the Inspector General's most important tool for ferreting out waste, fraud, and abuse is the extensive subpoena power created by Congress to aid his investigations. 5 U.S.C. app. § 8. Congress considered this subpoena power "absolutely essential to the discharge of the [Inspector General's] functions." S.Rep. 1071, at 1978 U.S.Code Cong. and Ad.News 2709.

Moreover, "[a] constricted interpretation would be at odds with the broad powers conferred on the Inspector General by the statute." *Westinghouse*, 788 F.2d at 170. Each Inspector General is empowered to subpoena all information "necessary in the performance of the functions assigned by this Act." *Id.* at § 6(a)(4). The legislative history nowhere suggests that Congress intended to limit the wide latitude traditionally accorded agency subpoena power when it empowered Inspector Generals to subpoena information "necessary" for performance of their functions. As such, this Court must employ the well-established standards governing examination of agen-

cy subpoenae, and those offer respondents little comfort.

■ An agency need show only that the investigation is within the scope of its authority and that the requested documents are minimally relevant to that inquiry. *United States v. Balanced Financial Management, Inc.*, 769 F.2d 1440, 1443 (10th Cir.1985); *United States v. Kis*, 658 F.2d 526, 536 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Freedom Church*, 613 F.2d 316, 321 (1st Cir.1979). As the Court has discussed above, the DOD Inspector General is authorized to conduct the joint investigation at issue here. The affidavits supplied to this Court show that the requested information is more than minimally relevant to the Inspector General's permissible inquiry. *See, Eberhardt Affidavit* ¶ 11; *Petition for Summary Enforcement*, Exhibit 1.

■ Given the breadth of the Defense Department's inquiry, the subpoenae are as narrowly focused as anyone could reasonably expect. The Department seeks documents relating to rate-setting by interstate van lines, agency agreements between interstate van lines and their local representatives, anti-competitive activities and the persons involved in them, suspension of moving and storage companies from Defense contracting, and destruction of documents. These are obviously pertinent to and necessary for the Department's investigation.

■ Respondents contend that, even if the subpoenaed documents are relevant, the subpoenae themselves are overly burdensome and should not be enforced. But burden by itself does not deny enforcement. Courts have long recognized that a party must endure some burden when asked to respond to a legitimate agency inquiry, especially one as comprehensive as the investigation at issue. *United States v. Powell*, 379 U.S. at 58, 85 S.Ct. at 255; *Federal Trade Commission v. Texaco, Inc.*, 555 F.2d at 882. Only if compliance would "unduly disrupt or seriously hinder

normal operations" of a business can a court even modify an agency subpoena. *Id.* Respondents have not shown that compliance would so cripple their business that the subpoenae should be quashed or restricted. *See, United States v. Firestone Tire and Rubber Co.*, 455 F.Supp. 1072 (D.D.C.1978).

■ Any hardship these subpoenae impose hardly compares to burdens countenanced by the courts with seemingly little difficulty. *See, e.g., FTC v. Texaco*, 555 F.2d at 868–69; *Firestone Tire and Rubber Co.*, 455 F.Supp. 1072. Moreover, at least sixty-eight of the interstate carriers have fully complied with identical subpoenae and apparently have not found it crippling to do so. *Petitioner's Memorandum* at 17. Moreover, respondents have refused DOD's offer to defer its requests for substantial document production. *Eberhardt Affidavit*, Exhibit 7. No evidence suggests that respondents even advanced a counter-schedule to minimize any burden they might experience. Because respondents have not sustained their burden of proof as to the irrelevance of the material sought or undue difficulty of compliance, the Court denies their motion.

### RESPONDENTS HAVE NOT PROVED THAT DISCOVERY SHOULD BE ALLOWED.

Dresser Industries supplies the standard in this Circuit regarding the availability of discovery in subpoena enforcement proceedings. *Dresser* instructs district courts to be "cautious in granting discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of [government] agencies." 628 F.2d at 1388. *Dresser* dictates that:

> [d]iscovery should be permitted only where the respondent is able to distinguish himself from 'the class of the ordinary (respondent),' ... by citing special circumstances that raise doubts about the agency's good faith. Even then, district courts must limit discovery to the

minimum necessary in the interests of justice ...

*Id., citing United States v. Fensterwald*, 553 F.2d 231, 231–32 (D.C.Cir.1977) (per curiam).

■ As their sole evidence of bad faith, respondents once again point to the confluence of the DOD and Justice inquiries and the seemingly exclusive role of Justice Department officials in regulating the process by which discovery was conducted. But, as this Court has made evident, that alone proves nothing. The fact of the joint inquiry does not invalidate a legitimate investigation begun by Department of Defense officials for DOD's own purposes. Consequently, this Court cannot find allegations of bad faith substantial enough to justify discovery in this case.

### THE SUBPOENAE ARE CONSTITUTIONAL.

■ Respondents Bekins Van Lines and Bekins International Lines argue that the subpoena power on which the Department of Defense relies is unconstitutional and contrary to the hallowed principle that the armed forces are not to be used to enforce the laws of the United States. For support, respondents point to one case, *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

At issue in *Tatum* was Army surveillance of political protests. Both the majority and the impassioned dissenters registered the strongest disapprobation for military interference in civilian affairs. 408 U.S. at 15–16, 92 S.Ct. at 2326; 408 U.S. at 16–22, 92 S.Ct. at 2327–30 (Douglas, J., dissenting). *Tatum* leaves no doubt that courts can and should redress any injury resulting from such interference. *See id.* at 16, 92 S.Ct. at 2327. But these precepts, so deeply rooted in our history and traditions, are utterly irrelevant to matters that arise when the military polices its own house and seeks to impose a necessary discipline on contractors who may hope that they can evade the overworked eyes of Defense Department auditors. Of the Defense Department's power to control

its contractors and unearth wrongdoers among them there can be no doubt. *See, e.g., United States v. Westinghouse Electric Corp.*, 788 F.2d 164.

## CONCLUSION

The Court finds that respondents have not adduced sufficient evidence to carry their burden of proving the subpoenae impermissible. Nor have respondents carried their burden of proving that the Court should permit discovery about the permissibility of the subpoenae. As a result, this Court must deny respondents' motion to quash the subpoenae or to take limited discovery. By Order of even date herewith, the Court will order respondents to comply with the subpoenae forthwith.

## ORDER

In accordance with the Opinion issued in the above-captioned case of even date herewith, and for the reasons set forth therein, it is this 31st day of October, 1986,

ORDERED that respondents' motion to quash administrative subpoenae shall be and hereby is denied; and it is

FURTHER ORDERED that respondents' motion for leave to take limited discovery shall be and hereby is denied, and it is

FURTHER ORDERED that petitioner's motion for summary enforcement of administrative subpoenae shall be and hereby is granted; and it is

FURTHER ORDERED that respondents shall have thirty (30) days from the date of this Order to produce all subpoenaed material at petitioner's offices in the District of Columbia.