**UNITED STATES of America**

v.

**AERO MAYFLOWER TRANSIT CO., INC., et al., Appellants, Global Van Lines, Inc.**

No. 86–5674.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1987.
Decided Oct. 30, 1987.

Joseph Brooks, with whom William L. Gardner, Washington, D.C., was on brief for appellants Allied Freight Forwarding, Inc., et. al.

James A. Calderwood, with whom Edward J. Kiley, Washington, D.C., was on brief for appellants Aero Mayflower Transit Co., Inc., et al.

Thomas M. Auchincloss, Jr., and Leo C. Franey, Washington, D.C., were on brief for appellant Bekins Van Lines Co.

Joan E. Hartman, Atty. Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Michael F. Hertz, Atty. Dept. of Justice, Washington, D.C., were on brief for the appellee. John Bates, Asst. U.S. Atty., Washington, D.C., also entered an appearance for the appellee.

Before MIKVA and SILBERMAN, Circuit Judges, and KOZINSKI,* Circuit Judge, United States Court of Appeals for the Ninth Circuit.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants, a number of interstate van lines, challenged subpoenas duces tecum issued by the Inspector General of the Department of Defense in support of an investigation into allegations of collusion and price fixing with respect to Department of Defense moving and storage contracts. Refusing to comply with the subpoenas, appellants asserted that they were themselves the victims of collusion; in the enforcement proceeding below, they sought limited discovery and an evidentiary hearing to establish that the Inspector General was not conducting an independent investigation but was serving as a mere conduit for an investigation by the Justice Department's Antitrust Division by lending out the Inspector General's subpoena power.

The district court declined to permit discovery and granted the United States' motion for summary enforcement of the administrative subpoenas. *United States v. Aero-Mayflower Transit Co.*, 646 F.Supp. 1467 (D.D.C.1986). The van lines appeal that ruling, contending that the district court applied an incorrect legal standard in

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

examining only whether the Inspector General had statutory authority to issue the subpoenas rather than also inquiring into the propriety of the purpose for which they were issued, an inquiry that might justify discovery. We agree with the district court that appellants are not entitled to discovery, and we reject appellant Bekins Van Lines' ("Bekins") contention that the involvement of the military in the administration of the subpoenas transgresses a constitutional proscription of the use of the Armed Forces in domestic law enforcement. Consequently, we affirm the enforcement order.

## I.

Because this case involves summary enforcement proceedings, the factual record is not fully developed. The contours of the dispute are, nevertheless, clear. For at least three years prior to the issuance of the district court's enforcement order, the Antitrust Division of the Justice Department had been investigating alleged anticompetitive practices in the moving and storage industry. This examination led to the return of five indictments and one prosecution by information of local moving and storage companies for price fixing. The Inspector General instituted his own investigation in September of 1985 into possible "anticompetitive activity in certain industries" that contract with the Defense Department. Sometime thereafter, the Inspector General targeted the moving and storage industry for further investigation.

In that same fall—although it is unclear whether before or after the Inspector General focused on the moving and storage industry—the Antitrust Division and the Federal Bureau of Investigation suggested to the Inspector General a cooperative investigation into the price-fixing allegations. Having agreed to that investigation, the Inspector General signed, on April 10, 1986, 377 subpoenas directed to interstate van lines and their local agents.

Appellant van lines informed the Inspector General that they would not comply with the subpoenas, and the government petitioned for summary enforcement on August 14, 1986. Appellants adduced several affidavits to show that the Inspector General had simply "rubber stamped" the subpoenas and thus improperly delegated his authority to the Justice Department. The affidavits recite that on numerous occasions recipients of the subpoenas who sought extensions of time or clarifications from Defense Department personnel were told that the latter had no independent authority so to act and were referred to the Justice Department. The affidavits further state that Justice Department personnel routinely exercised authority to modify the Inspector General's subpoenas and that the documents produced in response to the subpoenas were to be directly available to the Justice Department, without prior review by the Inspector General. Finally, it is claimed that the Inspector General's investigation was of unprecedented magnitude—suggesting that the Inspector General did not conceive the investigation alone. On the strength of this record, appellants argued below that the subpoenas should be quashed as having been issued for an improper purpose, and requested in the alternative that they be allowed limited discovery and an evidentiary hearing in order to prove that improper purpose by demonstrating that the Inspector General was acting as nothing more than a return agent or document repository for the Justice Department.

The district court declined to pass on the degree of independence exhibited by the Inspector General, ruling that "[a]n agency need show only that the investigation is within the scope of its authority and that the requested documents are minimally relevant to that inquiry." 646 F.Supp. at 1472. It also noted that the coordination of the agencies' efforts "is precisely the kind of cooperation that an efficient government should encourage." *Id.* at 1471. It is from that ruling that the van lines appeal.

## II.

In 1978, Congress, out of concern over governmental inefficiency, created offices of Inspector General in a number of

departments and agencies.[1] The Report of the Senate Committee on Governmental Affairs on the legislation referred to "evidence [that] makes it clear that fraud, abuse and waste in the operations of Federal departments and agencies and in federally funded programs are reaching epidemic proportions." S.REP. No. 1071, 95th Cong., 2d Sess. 4, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 2676, 2679. The Committee blamed these failures in large part on deficiencies in the organization and incentives of executive branch auditors and investigators. The Inspectors General were, therefore, to provide intra-agency cohesion and a sense of mission in the struggle against waste and mismanagement as well as to further important communication between agencies: "[T]his type of coordination and leadership strengthens cooperation between the agency and the Department of Justice in investigating and prosecuting fraud cases." *Id.* at 6–7, U.S.Code Cong. & Admin.News 1978, pp. 2681–2682. In service of this end, the Act gives the Inspectors General both civil[2] and criminal[3] investigative authority and subpoena powers coextensive with that authority.[4]

As a general proposition, an investigative subpoena of a federal agency will be enforced if the "evidence sought ... [is] not plainly incompetent or irrelevant to any lawful purpose" of the agency. *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943); *see also FTC v. Texaco,* 555 F.2d 862, 871–73 (D.C.Cir.) *(en banc)* (tracing development of this doctrine), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977). However, a court may inquire into the agency's reasons for issuing the subpoena upon an adequate showing that the agency is acting in bad faith or for an improper purpose, such as harassment. *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Appellants contend that the Inspector General is acting in bad faith or for an improper purpose in this case because the information is actually sought for the Justice Department's Antitrust Division. Appellants rely on *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), in which a closely divided Supreme Court held that the IRS could not use its summons authority solely for a criminal investigation: "[T]he good faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice...." *Id.* at 317, 98 S.Ct. at 2368. But the Court's opinion in *LaSalle* turns entirely on its examination of the IRS's

---

1. The original Inspector General Act, Pub.L. No. 95–452, 92 Stat. 1101 (1978), did not include an Inspector General for the Defense Department. That office was added by amendment in the Department of Defense Authorization Act for 1983. Pub.L. No. 97–252, § 1117(a)(1), 96 Stat. 718, 750 (1982).

2. *See, e.g.,* 5 U.S.C. app. § 2(2) (1982). Such an investigation might lead, for instance, to a decision by an agency to prohibit certain contractors from bidding on agency contracts or a civil suit to recover sums improperly charged the agency.

3. In addition to Senate Report 95–1071, *supra,* which demonstrates that "fraud" was taken to encompass criminal fraud, there are provisions in the Act directing a report to the Attorney General whenever there are grounds to suspect violation of federal criminal law, 5 U.S.C. app. § 4(d) (1982), and charging the Department of Defense Inspector General with guidance of all Defense Department activities relating to *criminal* investigations, *id.* § 8(c)(5). This latter provision applies only to the Department of Defense Inspector General and is apparently neces-

sary because that office is distinct among Inspectors General in not holding *all* departmental investigative powers. *See* H.R.REP. No. 749, 97th Cong., 2d Sess. 175–76, *reprinted in* 1982 U.S.CODE CONG. & ADMIN.NEWS 1555, 1569, 1581.

4. The Act appears at 5 U.S.C. app. §§ 1–12 (1982 & Supps. I–III). In relevant part, it provides:

In addition to the authority otherwise provided by this Act, each Inspector General, in carrying out the provisions of this Act, is authorized—

....

(4) to require by subpena [sic passim] the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act, which subpena, in the case of contumacy or refusal to obey, shall be enforceable by order of any appropriate United States district court: *Provided,* That procedures other than subpenas shall be used by the Inspector General to obtain documents and information from Federal agencies.

5 U.S.C. app. § 6(a)(4) (1982).

statutory summons authority. The Court was unable to find there congressional authorization to use IRS summonses solely for criminal investigations. *Id.* n. 18.[5] By contrast, Congress in the statute before us has explicitly *directed* the Inspector General to engage in criminal investigations. *LaSalle* thus appears to us to be totally inapposite. *Cf. In re EEOC*, 709 F.2d 392, 399 (5th Cir.1983) (refusing to import rule of *LaSalle* into EEOC subpoena enforcement proceeding).

Appellants also rely on *United States v. Westinghouse Electric Corp.*, 788 F.2d 164 (3d Cir.1986). That case, however, is simply a variant of *LaSalle.* Westinghouse, a defense contractor, challenged an Inspector General subpoena because it was allegedly issued solely for the benefit of another component of the Defense Department, the Defense Contract Audit Agency. Although the Third Circuit did say that an inquiry into the Inspector General's "motive or intent" was appropriate, that statement is contained in the court's discussion of a Defense Department internal policy memorandum governing the issuance of Inspector General subpoenas at the request of other *Defense Department* audit or investigative units. The memorandum required the Inspector General to "determine[ ] the audit or investigation to be in furtherance" of *his* function. *Id.* at 169. The Third Circuit simply noted that the question whether the Inspector General had made this determination might involve examining his motive. In the present case, no such Defense Department policy memorandum or regulation dealing with the Inspector General's relations with the Justice Department has been brought to our attention. In other words, no body of law, whether statutory or regulatory, explicitly or implicitly restricts the Inspector General's ability to cooperate with divisions of the Justice Department exercising criminal prosecutorial authority.

▪ Nor is there a suggestion of any restriction on the Justice Department's power to obtain through the grand jury process all the information sought by the subpoenas here at issue. The Inspector General subpoenas clearly did not operate to circumvent statutory or other limitations on the Justice Department's investigative powers. The use of Inspector General subpoenas, instead of grand jury subpoenas, did, however, further an important Defense Department interest. Information obtained through a grand jury would not be readily available to the Defense Department in pursuing civil remedies against those who may have defrauded it. *See* FED.R.CRIM.P. 6(e). The procedure followed by the two Departments of government was, therefore, reasonably calculated to serve the legitimate interests of both.

▪ In sum, we can see no reason for discovery in this case because even if appellants' allegations are taken as true, the subpoenas were properly enforced. So long as the Inspector General's subpoenas seek information relevant to the discharge of his duties, the exact degree of Justice Department guidance or influence seems manifestly immaterial.[6] To be sure, "discovery may be available in some subpoena enforcement proceedings where the circumstances indicate that further information is necessary for the courts to discharge their duty." *SEC v. Dresser Indus.*, 628 F.2d 1368, 1388 (D.C.Cir.) (*en banc*) (upholding parallel investigations by Securities and Exchange Commission and Justice Department), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Those are the circumstances referred to by the Supreme Court in *Powell*, 379 U.S. at 58, 85 S.Ct. at 255, where a government agency is acting without authority or where its purpose is

---

5. In the wake of *LaSalle*, Congress broadened the IRS's summons power to allow inquiry into any revenue-related offense. *See* 26 U.S.C. § 7602(b)–(c) (1982). Congress noted the costs of protracted litigation at the summons enforcement stage. S.REP. No. 494, 87th Cong., 2d Sess. 285, *reprinted in* 1982 U.S.CODE CONG. & ADMIN. NEWS 781, 1031.

6. Were we to conclude that the Inspector General must display an independent judgment as to the issuance of subpoenas, presumably he could now satisfy that test easily by reconsidering and then reissuing the subpoenas. Surely it cannot be argued that the Justice Department's role permanently taints this investigation.

harassment of citizens. Faced with that (unlikely) situation, the district court has ample discretion to conduct an inquiry, but it "must be cautious in granting such discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of the regulatory agencies." *Dresser*, 628 F.2d at 1388; *see also Federal Maritime Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir.1975) ("the very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate").

### III.

■ In a dictum in *Laird v. Tatum*, 408 U.S. 1, 15–16, 92 S.Ct. 2318, 2326–27, 33 L.Ed.2d 154 (1972), the Supreme Court stated that the "philosophical underpinnings" of the constitutional provisions for civilian control of the military and against the quartering of soldiers in private homes are consistent with our society's "traditional insistence on limitations on military operations in peacetime." The Court indicated that federal courts stand ready to consider claims arising from "military intrusion into the civilian sector." *Id.* at 16, 92 S.Ct. at 2327; *see also id.* at 16–24, 92 S.Ct. at 2327–30 (Douglas, J., dissenting) (tracing in considerable detail the roots of the principle that the military not be used in civilian law enforcement).

Appellant Bekins asks us to employ this principle to strike down the Inspector General Act as it applies to the Defense Department as a violation of the constitutional right of civilians to be free of law enforcement efforts by the military.[7] Bekins emphasizes that recipients of Department of Defense Inspector General subpoenas may be required to appear with their documents at a military installation and forced to yield these documents to an Army Major General.

Whatever the precise content of the constitutional prohibition on the use of the military in civilian law enforcement, this routine collection of subpoenaed materials does not offend that proscription. The true concern underlying this principle—and we agree that it is a vitally important concern—is that the military not wield against ordinary citizens any of the special expertise and technology or extraordinary powers conferred upon it for use against our enemies. Even the threat of that force would be a grave matter. Here, however, the Major General behind the desk is perfectly interchangeable with any civilian clerical employee waiting to collect requested documents, and the desk behind which he sits is no more threatening than the average civilian desk. Nor is there a suggestion here that the statute authorizes the use of military force in the enforcement of Inspector General subpoenas; if that were the case, the action presumably would not have taken place in the district court. We believe that in situations where military personnel are fungible with civilian personnel—where the military has no special expertise and can exercise no special coercive power—constitutional concerns are not implicated.

For the foregoing reasons, the district court's order is

*Affirmed.*

---

**7.** The Inspector General is not himself a member of the Armed Forces, 5 U.S.C. app. § 8(a), but may employ members of the Armed Forces in executing his duties.

Congress has excepted audits and investigations instituted by the Inspector General from the Posse Comitatus Act, 18 U.S.C. § 1385 (1982), which makes it unlawful to use parts of the Army or Air Force to execute the laws. 5 U.S.C. app. § 8(g) (1982).