**RESOLUTION TRUST CORPORATION,**
Petitioner,

v.

Grant THORNTON, Respondent.

Misc. A. No. 92–94.

United States District Court,
District of Columbia.

May 1, 1992.

Memorandum and Order
on Reconsideration
June 9, 1992.

Suzanne Rigby, Senior Atty., Resolution Trust Corp., John H. Korns, Paul M. Laurenza, James E. Topinka, Pettit & Martin, Washington, D.C., for Resolution Trust Corp.

Stanley J. Parzen, Mark W. Ryan, Mayer, Brown & Platt, Washington, D.C., for respondent in Grant Thornton.

## MEMORANDUM

OBERDORFER, District Judge.

The Resolution Trust Corporation ("RTC") seeks enforcement of three subpoenas *duces tecum* it served on respondent Grant Thornton ("Grant"), an accounting firm, on August 22 and September 27, 1991. The RTC is investigating Grant to determine Grant's potential civil liability in connection with Grant's past audits of three failed savings and loan associations. In two of those cases, CitySavings and Metropolitan, Grant seeks to modify the subpoenas by requiring the RTC to give Grant ten days' notice before using the disclosed material in other investigations by the RTC or the Federal Deposit Insurance Corporation ("FDIC"), in order that Grant will have an opportunity to challenge such use. In the third case, San Jacinto, Grant seeks both this notice protection and a "Chinese wall" that would prevent the RTC from disclosing subpoenaed information to the FDIC for possible use in the latter agency's pending district court litigation against Grant. Grant also seeks to ensure that the information is not improperly disclosed within Kenneth Leventhal, RTC's outside consultant in the San Jacinto case, which firm also is a party to the pending district court litigation against Grant.

In all three cases, the RTC has declined to offer blanket notice of all future use of the subpoenaed information. It has assured Grant that it will give notice of disclosure to any other government agencies, but it will not agree to give notice of, or place any limitations on, use of the material "internally" within either RTC or FDIC. Further, in San Jacinto, it represents that measures sufficient to prevent improper disclosure within Kenneth Leventhal are already in place. The Court heard argument on the RTC's motion on April 23, 1992. For the reasons stated below, the Court will order that the subpoenas be enforced in full, subject to the requirement that the RTC must give Grant ten days' written notice of any disclosure of the San Jacinto material to the FDIC.

## I.

The RTC served the CitySavings and Metropolitan subpoenas on Grant on August 22, 1991, and the San Jacinto subpoena on September 18, 1991. Grant first challenged the subpoenas administratively, asserting, *inter alia*, that they were overbroad and burdensome. The RTC denied Grant's San Jacinto objections on November 29, and its objections in the other two matters on December 12. Petitioners' Exhs. A.4, B.6. In each case, the RTC gave identical assurances of confidentiality, including the assurance that "documents designated as confidential by the submitter will not be disclosed outside FDIC/RTC without ten days' advance notice to the submitter." *Id.* ¶ 2. However, that assurance excepted disclosure to outside counsel or consultants, or in any judicial or administrative proceedings as long as the RTC complies with applicable forum rules. *Id.* ¶¶ 3, 4. The RTC also advised that "[u]nder no circumstances will FDIC/RTC agree

to limit internal use of subpoenaed information." *Id.* ¶ 5.

On December 30, Grant made an initial document production in the Metropolitan case. On the day of the production, the parties agreed that no other use would be made of the information except pursuant to statute, agency rule or practice. Respondent's Exhs. Z, AA. The next day, the RTC issued an "internal practice guideline" which stated that subpoenaed information "may be shared internally with RTC officers, employees, or agents (including consultants and outside counsel) who have a need for such documents in the performance of their duties," including for use in other investigations.[1] Petitioner's Exh. A.5 at 4. Apparently contending that this policy issued too late for it to be an "agency rule or practice," Grant again objected to the Metropolitan production, and has not produced further documents in that case or in CitySavings.

In San Jacinto, Grant raised the additional objection that the subpoena creates conflicts of interest with the pending "Sunbelt Savings" case in the Northern District of Texas. *FDIC v. McBirney*, Civ. No. CA3–89–2295–R (N.D.Tex.). In that case, the FDIC has sued Grant, who in turn brought Kenneth Leventhal, a second accounting firm, into the suit as a third-party defendant. Kenneth Leventhal happens to be the RTC's outside consultant in San Jacinto, and as such would have access to Grant's San Jacinto papers, papers that both Kenneth Leventhal and the FDIC have sought to use in *Sunbelt*.[2] Moreover, Kenneth Leventhal also has succeeded Grant as auditor for San Jacinto. Thus, Grant's confidentiality concerns are threefold: first, that the RTC will disclose information to the FDIC, allowing the FDIC to circumvent the normal discovery process in *Sunbelt* and pressure Grant to settle that case; second, that Kenneth Leventhal will

obtain the San Jacinto documents, either directly or from the FDIC, and turn them to its own use in *Sunbelt;* and third, that the Kenneth Leventhal auditors for San Jacinto could, even if screened from the *Sunbelt* case, use Grant's papers to "restate" Grant's work for San Jacinto, thereby gaining leverage over Grant by increasing the chances that the RTC will initiate litigation in that case.

In response to Grant's concerns, the RTC stated that Kenneth Leventhal had established a "Chinese wall" between the San Jacinto and *Sunbelt* matters, which are based in Kenneth Leventhal's Houston and Dallas offices, respectively. Petitioner's Exh. A.5 at 1–2. Kenneth Leventhal then instructed its staff that no one working on either matter could discuss it with anyone not working on the same matter, that "[t]here shall be no communication, either direct or indirect, between the two 'teams,'" and that no personnel could "cross over" between the two matters. Respondent's Exh. O. Later, it expressly assured RTC that no such communication or cross-over had taken place. Respondent's Exh. P. With regard to "internal use," the RTC clarified its position that it would not accept any limitation on internal use by referring Grant to the December 31 internal practice guideline. Petitioners' Exh. A.5 at 2. As seen above, that guideline does not refer to the FDIC, and the RTC did not explicitly state its position on "internal" disclosure to FDIC.

On January 27, Grant's counsel informed RTC that the "Chinese wall" as described was insufficient, and proposed a more rigorous identification and segregation of the Kenneth Leventhal "teams" responsible for the *Sunbelt* and San Jacinto matters. Respondent's Exh. Q. On February 27, the RTC defended the existing procedures, and claimed that Grant's proposals "would eliminate communication between govern-

---

1. This "need to know" disclosure standard is identical to that used by other agencies, including the FDIC. 12 C.F.R. § 309.6(b).

2. The relationship of *Sunbelt* to San Jacinto is premised on the numerous transactions between the two associations, which have led both

the FDIC and Kenneth Leventhal to charge that Grant, the auditor for both associations, may have failed to detect a "daisy chain" conspiracy, in which the losses of each savings and loan association were hidden by altering the books of both of them.

ment personnel and their consultants with respect to these two associations." Petitioner's Exh. A6 at 1. This language is the basis for Grant's claim that the RTC will in fact disclose documents subpoenaed in the San Jacinto investigation to the FDIC for use in *Sunbelt*. The RTC effectively has confirmed this claim, arguing that it may exchange the subpoenaed information relatively freely with the FDIC, as well as within the RTC.

## II.

Grant does not seriously challenge either the RTC's authority to issue the instant subpoenas or, for the most part, the scope of the subpoenas. Grant at times does suggest that the investigations are being conducted in bad faith, but stops short of asserting that its suggestions amount to a basis for denying enforcement under the "abuse of process" standard set forth in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).[3] Instead, Grant's papers and its extensive correspondence with the RTC focus on the narrower questions of to whom and under what conditions subsequent disclosure of subpoenaed material may take place.

■ The question common to all three subpoenas is whether the RTC may be required to give Grant ten days' advance notice before using subpoenaed material in investigations other than the one for which it was subpoenaed. This question must be considered in the context of the recent decision in *RTC v. KPMG Peat Marwick*, 779 F.Supp. 2 (D.D.C.1991). In that subpoena enforcement action, Judge Sporkin held that "absent statute, agency rule or practice to the contrary, the RTC will be limited in its use of the materials obtained to the particular investigation for which the subpoena was issued." *Id.* at 4. Accordingly, if the RTC could not point to any such rule or practice, it would be required to issue separate process for each investigation in which the same materials were sought. Once the agency establishes that a practice of sharing exists, however, "it will not be limited in its use of the subpoenaed information." *Id.*

Significantly, the RTC points out that in a hearing subsequent to the published decision in *Peat Marwick*, Judge Sporkin upheld the December 31, 1991 internal practice guideline as a sufficient basis for sharing subpoenaed material within the RTC. Reply at 10. He also rejected the suggestion that a notice requirement be imposed. *Id.* at 10–11 (quoting transcript of hearing on Feb. 24, 1992). This decision is consistent with the holding in *FTC v. Texaco*, 555 F.2d 862 (D.C.Cir.) (en banc), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 2940, 53 L.Ed.2d 1072 (1977), which imposed a ten-day notice requirement on disclosure *outside* the FTC, but vacated restrictions on internal use. *Id.* at 883–84; *accord FTC v. Cockrell*, 431 F.Supp. 561 (D.D.C.1977) (notice required for external disclosure); *see also FTC v. Anderson*, 631 F.2d 741, 748 (D.C.Cir.1979) ("Such a [blanket] notice requirement might interfere with agency enforcement functions by forcing disclosure of pending investigations.") Here, once the RTC issued the internal practice guideline, it became entitled to share subpoenaed material internally pursuant to that guideline's "need to know" standard, and it cannot be required to give notice of such internal sharing.[4]

While Grant argues that it should be given discovery and an evidentiary hearing on this issue, Grant has not made the threshold showing required to warrant such a hearing. *E.g., United States v. Aero–Mayflower Transit Co.*, 646 F.Supp. 1467, 1473 (D.D.C.1986), *aff'd,* 831 F.2d 1142 (D.C.Cir.1987) ("the confluence of [two] inquiries.... alone proves nothing.... [T]his Court cannot find allegations of bad faith substantial enough to justify discovery in this case.").

---

**3.** For instance, Grant cites the FDIC's aggressive settlement discussions in *Sunbelt*, and an RTC attorney's threat to file a 650 million dollar claim in San Jacinto. Grant then quotes the *Powell* court's concern that administrative subpoenas not be used "to put pressure on [respondent] to settle a collateral dispute." 379 U.S. at 50, 85 S.Ct. at 251. However, apart from the bald implication that the two events may be linked, Grant has not offered any evidence that the agencies are colluding or otherwise acting in bad faith.

**4.** Moreover, since the practice guideline expressly stated that it "embodies existing practices of

■ Further, the Court holds that, at least in the special case of RTC's sister agency the FDIC, no notice is required for interagency disclosure for use in other investigations. The FDIC is responsible for resolving savings associations that failed before January 1, 1989; the RTC is charged with resolving savings associations that failed on or after that date. By statute, each agency has identical investigative and subpoena powers which are exerted over the same industry. 12 U.S.C. § 1441a(b)(4)(A); 12 U.S.C. § 1821(d). Since *Peat Marwick* sanctions not only intra-agency sharing, but also interagency sharing if such sharing is pursuant to agency rule or practice, 779 F.Supp. at 4, the RTC should not be restricted from consulting with FDIC where relevant to the agencies' joint mission.

Grant argues that since the internal practice guideline does not mention information sharing with the FDIC, it cannot constitute a "practice" sufficient to justify such sharing under *Peat Marwick*. However, the confidentiality assurances, with their references to "FDIC/RTC," certainly contemplate such sharing. Petitioner's Exh. A.4 ¶ 2. While these assurances are less detailed than they might be, their clear treatment of the RTC and the FDIC as one entity, coupled with the fact that the RTC offers identical assurances in many of its investigations, suffice to make them a "practice" that supports information sharing under *Peat Marwick*. Especially given the ample evidence that Congress intended the RTC and FDIC to work in tandem, *see* 12 U.S.C. § 1441a(b)(12)(G), sharing between these agencies on related matters does not constitute the sort of lawless agency behavior with which Judge Sporkin expressed concern. 779 F.Supp. at 4. Thus, as a general matter, no notice requirement or other limitations should be placed on the RTC's disclosure for use in other investigations, either internally or to the FDIC.

■ Grant nonetheless insists that the flow of information between the RTC and the FDIC should be restricted in the San Jacinto case, where the FDIC already has filed a lawsuit against Grant. Grant's primary concern is that unrestricted disclosure would permit the FDIC to make an "end run" around discovery procedures in *Sunbelt*, and place undue pressure on Grant to settle that suit. This prospect is somewhat more troubling than the case, just discussed, where RTC disclosures to the FDIC for investigative purposes might *lead to* an FDIC lawsuit. Even though interagency sharing in accordance with established procedures generally is permissible, there is reason for concern about the propriety of such sharing in cases that are already pending in another forum.

In *FTC v. Atlantic Richfield Co.*, 567 F.2d 96 (D.C.Cir.1977), respondents challenged enforcement of FTC investigative subpoenas on the ground that material obtained under them might be used in a separate FTC adjudicative proceeding. Respondents based their argument on the "structure and scheme" of FTC regulations, which suggested a strict separation between the agency's investigative and adjudicative powers. *Id.* at 99. The district court granted enforcement, but the Court of Appeals remanded to the FTC for a definitive construction of agency rules pertaining to disclosure of subpoenaed information. In so doing, the court instructed the agency to consider the constitutionality of disclosure in light of the pending proceeding, *id.* at 103, and strongly suggested that an interpretation in favor of disclosure also would undermine the role of the administrative law judge in the pending adjudication. *Id.* at 104. The court further analogized the issue to attempts to bypass the rules of procedure in federal court via grand jury subpoenas. *Id.* at 104–05 & n. 19.

Even though this language in *Atlantic Richfield* arguably is dicta,[5] the Court of

---

RTC," Petitioner's Exh. A.5., and absent a showing of bad faith, there is no merit to Grant's argument that issuance of the practice guideline on the day after the Metropolitan production

invalidated the RTC's agreement with respect to that production.

5. Indeed, at the hearing, the RTC noted that on remand, the FTC did construe its regulations to

Appeals' constitutional and practical concerns about disclosure for use in pending litigation are well-taken. It is true that RTC has assured Grant that "[d]isclosure by FDIC/RTC in the course of any judicial or administrative proceeding" would be governed by appropriate forum rules, Petitioner's Exh. A.4 ¶ 4, and that Grant would be able to seek relief from any violation of this assurance in the Texas court in which *Sunbelt* is pending. *Cf. Anderson*, 631 F.2d at 747. It is equally true, however, that Grant will be less able to challenge the FDIC's use of information in or out of court, and the Texas court less able to adjudicate any such challenges, if Grant does not know what information is disclosed by the RTC. Under these unusual circumstances, a limited measure of relief is appropriate. Accordingly, the Court will order that, in the case of the San Jacinto subpoena only, the RTC must give Grant no less than ten days' written notice of any disclosure of the subpoenaed information to the FDIC, in the same manner as it has already offered to give notice of disclosure to any other agencies.

■ On the other hand, Grant's concerns about improper disclosures within Kenneth Leventhal appear to be adequately addressed by the procedures already in effect at RTC, the physical separation of the Kenneth Leventhal personnel, and the other accommodations already being offered. First, there are a number of regulations designed to prevent disclosure by the RTC's outside contractors, and breaches of these rules may be sanctioned by contract rescission, a bar from further contracting, potential damage claims, and possible criminal penalties. 12 C.F.R. § 1606.11, 1606.-15; 18 U.S.C. § 641. In *RTC v. Ernst & Young*, Misc. No. 91–398, 1992 WL 77255 (D.D.C. Jan. 29, 1992), Judge Lamberth found that these procedures provided sufficient protection for confidential personnel files. In addition, the RTC acknowledges a potential conflict between Kenneth Leventhal's dual roles in San Jacinto and in *Sunbelt*, and has represented that the "Chinese wall" procedures, *see supra* page 3, will suffice to keep the San Jacinto materials both from Kenneth Leventhal's *Sunbelt* team and from its San Jacinto audit team.[6] While Grant clearly disagrees with the specific details of those procedures, "[t]he agency's discretion in regard to procedural rules includes discretion in such matters as publicity and disclosure." *Anderson*, 631 F.2d at 746 (citing *FCC v. Schreiber*, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965)). Since the procedures established by the RTC and its consultant represent a reasonable exercise of discretion, further intervention in the San Jacinto subpoena would be unwarranted.[7]

■ Finally, Grant asserts that "the question of who shall bear copying charges remains unresolved." Respondent's Mem. at 44. Citing *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1033–34 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979), it argues that the RTC should pay for photocopying. However, the RTC correctly notes that *Arthur Young* merely established that the district court *may* order reimbursement for photocopying where the cost of compliance would be unreasonable. *See OTS v. Ernst & Young*, 795 F.Supp. 7 (D.D.C.1992). Here, Grant has not shown that its costs would be unreasonable, particularly since

permit disclosure, apparently without any further challenge to its authority to do so.

**6.** Grant's concern that the *FDIC* might disclose information to Kenneth Leventhal is met both by the notice requirement the Court has imposed on disclosure to the FDIC and by the fact that, under the confidentiality assurances, the FDIC in turn would be required to give notice of outside disclosure. Petitioner's Exh. A.4 ¶ 2.

**7.** Grant also claims that certain material sought in the San Jacinto subpoena is outside the scope of the RTC's investigation. Given the agency's broad latitude in determining the scope of its investigation, the material at issue, which concerns Grant's work for affiliates of San Jacinto as well as peer review reports on Grant, is clearly relevant to the investigation. This is especially true with regard to the former documents, since the interlocking connections among savings associations are part of the problem that the RTC is trying to investigate. With regard to the latter, peer review reports were among the documents for which Judge Sporkin, over a respondent's objection, ordered disclosure in *Peat Marwick*.

the RTC's subpoena permits Grant to produce its original documents. At the hearing, RTC counsel represented to the Court that if Grant produces original documents, the RTC will keep them in Houston, where Grant's office is located, and would make them accessible to Grant. Counsel also represented that if the RTC deemed it necessary to make copies of the documents to be used outside of Houston, it would pay for any such copying. Based on these representations, Grant's request for photocopying costs will be denied.

## ON MOTION FOR RECONSIDERATION

■ This is a subpoena enforcement action brought by the Resolution Trust Corporation ("RTC") against Grant Thornton, an accounting firm, to compel the firm to respond to three administrative subpoenas issued in connection with the RTC's investigation of Grant Thornton's role, if any, in the failure of three financial institutions. The RTC has moved for reconsideration of those portions of a May 1, 1992 Memorandum and Order of this Court that required the RTC to give ten days' notice to respondent Grant Thornton prior to disclosing to the Federal Deposit Insurance Corporation ("FDIC") any of the materials responsive to the San Jacinto subpoena. The facts of this case and the rationale for the notice requirement are set forth in the Court's prior Memorandum.

The RTC now contends that several decisions of the Court of Appeals for the District of Columbia Circuit render a notice requirement of this sort inappropriate under the circumstances of this case. The most relevant of these decisions, which the RTC concedes was "not thoroughly discussed" in its prior submissions to this Court (in fact it was not "discussed" at all), is *Appeal of FTC Line of Business Report*

*Litigation,* 595 F.2d 685 (D.C.Cir.1978). *Appeal of FTC* was an enforcement action brought by the Federal Trade Commission to compel numerous corporations to respond to two statistical surveys—essentially the equivalent of investigatory subpoenas—issued by the FTC. Several of these corporations were respondents in pending adjudicative proceedings brought by the FTC. These corporations objected to the survey on the ground that FTC complaint counsel might obtain the survey information for use in the adjudicative proceedings, and thereby make an "end run" around the discovery procedures ordinarily applicable to those proceedings. *See id.* at 707. The court held, however, that the corporations' claims did not relate to the *enforcement* of the surveys, but rather only to the extent to which the information responsive to the surveys could be used in connection with the adjudication. *Id.* at 708. Accordingly, the court held that the corporations' objections had to be made first in the adjudicative proceedings and then pursued, if necessary, in the administrative and judicial avenues of appeal; the objections could not be raised in the subpoena enforcement action. *Id.*[1]

The second case, *FTC v. Anderson,* 631 F.2d 741 (D.C.Cir.1979), confirms this holding. In *Anderson,* the FTC moved to enforce six administrative subpoenas served upon respondents in connection with an FTC adjudication. The respondents were concerned that the FTC would use the subpoenaed materials in connection with other administrative proceedings or investigations either before the FTC or other agencies, in violation of the discovery rules ordinarily applicable to those proceedings as well as their right to Due Process. They sought to require the FTC to provide them with notice prior to making such use or

---

**1.** Grant Thornton also relies heavily on *FTC v. Atlantic Richfield Co.,* 567 F.2d 96 (D.C.Cir. 1977). As noted in the May 1 Memorandum, the discussion of this issue in *Atlantic Richfield* was dicta; the court remanded the matter to the agency for an interpretation of its own rules regarding the exchange of subpoenaed information, and the agency ultimately concluded that its rules do not prevent access by complaint

counsel to documents and information otherwise properly obtained by the FTC. *See Appeal of FTC,* 595 F.2d at 707–08. Moreover, the discussion of *Atlantic Richfield* in *Appeal of FTC* does not leave room for any distinction between the situations presented in the two cases; indeed, the court expressly states that the two cases involve "essentially the same claim." *Id.* at 707.

disclosure of the materials. The court first noted that "[t]o the extent . . . respondents are concerned about the use of subpoenaed documents as *evidence* in another administrative proceeding, their objections should be raised before the appropriate judicial officer presiding in that proceeding." *Id.* at 747 (emphasis added). To the extent that the respondents were concerned that the subpoenaed material would be used as general background information or for investigatory leads, the *Anderson* court concluded that respondents had no right to notice prior to such use of the information. "The Constitution does not require that a respondent in an administrative proceeding be aware of all evidence, information and leads to which opposing counsel might have access." *Id.* at 748.[2]

This authority persuasively suggests that the proper forum for Grant Thornton to raise its concerns about the use of the San Jacinto materials is the *Sunbelt* court itself.[3] The Court of Appeals has held that the only appropriate task for the enforcing trial court is to determine the enforceability of the RTC subpoenas, as distinguished from the use that can be made of the subpoenaed information. "The enforcement court's function is limited to determining 'if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *Id.* at 745 (quoting

*United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950)). As discussed in the May 1 Memorandum, Grant Thornton has no persuasive claim that the subpoenas are defective in any of these three areas. "Any other defects in the agency's procedures may be considered only in the context of an appeal from the final decision of the agency in the adjudicative proceeding," *id.*, or in the circumstances of this case, only in the context of a motion in the *Sunbelt* case.

Therefore, Grant Thornton will be given twenty-one days from the date of this Memorandum and Order to file a motion for appropriate relief from the *Sunbelt* court, during which time the notice requirement contained in the May 1 Order shall remain in effect. If such a motion is filed within twenty-one days, the notice requirement shall remain in effect until such time as the motion is resolved by the *Sunbelt* court. At such time as the motion is resolved by that court, or in the event that no such motion is filed within twenty-one days, the May 1 Order shall be modified, by operation of law and without any further Order of this Court, in the following respect only: The third paragraph of the Order, which imposes on the RTC a duty to provide Grant Thornton with ten days' written notice of any disclosure to the

---

**2.** Grant Thornton attempts to distinguish these two cases by arguing that neither involved the threatened use of subpoenaed information in other district court litigation, but rather involved only the possible use in other administrative proceedings. Grant Thornton stresses that the situations are distinguishable because district court litigation is governed by the Federal Rules of Civil Procedure, whereas administrative proceedings are governed only by agency procedural rules (which the agencies themselves, not the courts, have primary responsibility for interpreting). But Grant Thornton has not explained the significance of this distinction, and in the Court's view there is none. Administrative proceedings, although not governed by the Federal Rules, are nevertheless governed by their own rules of procedure and discovery. Where there is a clear violation of an agency rule, the court is obliged to police it. The respondents in *Anderson* and *Appeal of FTC* were concerned that the agency was attempting an end-run around applicable discovery proce-

dures just as Grant Thornton is concerned here that the FDIC is attempting to evade the Federal Rules. Moreover, although Grant Thornton argues that the notice provision is necessary to prevent a violation of the Federal Rules, it does not explain what specific rule will allegedly be violated. Certainly enforcement of the subpoenas alone does not give rise to any such violation. If indeed any rule is implicated by the FDIC's use of the information in connection with the *Sunbelt* case, that matter can best be policed, and indeed in light of the Circuit case law can *only* be policed, by the *Sunbelt* court itself.

**3.** It is true, of course, that the *Sunbelt* court will not be able to impose a notice requirement or any other conditions upon the RTC directly, since the RTC is not a party to that case. But the *Sunbelt* court can easily accomplish the same result by placing conditions on the FDIC's *receipt* of the San Jacinto materials from the RTC.

FDIC of the materials responsive to the San Jacinto subpoena, will be VACATED.

IT IS SO ORDERED.