### DIRECTOR OF THE OFFICE OF THRIFT SUPERVISION, Petitioner,

v.

### ERNST & YOUNG, Respondent.

### Misc. No. 91–401 (RCL).

United States District Court, District of Columbia.

March 3, 1992.

Kenneth J. Guido, Jr., Deputy Chief Counsel, Bryan T. Veis, Donna M. DeSilva,

---

Glynn O'D. Loeb, Washington, D.C., for petitioner.

Kenneth S. Geller, Evan M. Tager, Micahel A. Vatis, Mayer, Brown & Platt, Kathryn A. Oberly, Daniel M. Gray, Stephen N. Young, Ernst & Young, Washington, D.C., for respondent.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court upon a petition by the Director of the Office of Thrift Supervision ("OTS") for an order requiring Ernst & Young to show cause why it should not be required to comply with an administrative subpoena *duces tecum* served upon Ernst & Young, and for an order requiring the production of certain records and documents as set forth in that subpoena. For the following reasons, OTS's petition shall be granted and the subpoena shall be enforced.

## I. FACTS

On May 15, 1991, OTS authorized formal examination and investigation proceedings of the professional services provided to 23 financial institutions by Ernst & Young. Petitioner's Petition for an Order to Show Cause and for Summary Enforcement of Administrative Subpoena ("petition"), exhibit 1. On June 11, 1991, OTS issued a subpoena for the production of books, records, papers, documents and other tangible things in connection with the services that Ernst & Young provided these financial institutions. *Id.* at exhibit 2. This subpoena required the production of a wide variety of documents including, but not limited to, those that refer or relate to: Ernst & Young's engagement with each designated financial institution; the designated institutions' financial statements; the designated financial institutions' tax returns, those that refer or relate to auditing, accounting, reporting or internal control issues regarding the designated institutions; regulatory issues; all personnel files concerning individuals who performed work in connection with any designated institution; accounting, training and other types of manuals; Ernst & Young's peer reviews; various internal reviews by Ernst & Young; and "other documents bearing the name of any Designated Institution, or any subsidiaries, related entities, or affiliated individuals thereof, not previously mentioned in this subpoena." *Id.*

On June 20, 1991, Ernst & Young moved to quash the subpoena for "many reasons," including:

1. The OTS is without authority to subpoena much of the material that has been requested.

2. There is no authority for the OTS to conduct an investigation of Ernst & Young.

3. The subpoena is overly broad, burdensome and seeks materials which are neither relevant nor material to any legitimate OTS inquiry.

4. Portions of the subpoena are vague and ambiguous making compliance, even if the subpoena were valid, difficult if not impossible.

*Id.* at exhibit 4.

On June 28, 1991, OTS opposed Ernst & Young's motion to quash the subpoena. *Id.*, exhibit 5. On September 12, 1991, the Senior Deputy Chief Counsel of OTS denied Ernst & Young's motion and directed Ernst & Young to comply with the subpoena. *Id.* at exhibit 6. To date, Ernst & Young has refused to comply with the subpoena, and on December 30, 1991, OTS filed this petition for an order to show cause and for summary enforcement of its subpoena. On January 3, 1992, the court ordered Ernst & Young to show cause why it should not be ordered by this court to obey the subpoena served upon it by OTS.

Ernst & Young, in its opposition to the petition, described the subpoena as a "breathtakingly expansive demand" and asserted that: (1) OTS lacks authority to subpoena documents relating to pre-FIRREA conduct; (2) even if OTS has the authority to enforce this subpoena it should be required to take reasonable steps to reduce the burden and cost that the subpoena imposes on Ernst & Young; (3) OTS's demand for several categories of documents is unduly burdensome and bears no reason-

able relation to the agency's investigation; and (4) the court should prohibit the OTS from disclosing confidential information to other government agencies and private persons or require it to provide ten days' notice before disclosure.

## II. DISCUSSION

### A. *The Issue Presented*

This case was originally assigned to another judge on this court, but because a related case, *Resolution Trust Corporation v. Ernst & Young*, Misc. No. 91–398, 1992 WL 77254 (D.D.C. Jan. 29, 1992), was assigned to the undersigned judge, Ernst & Young moved to transfer this case to the undersigned judge. Ernst & Young asserted that OTS's petition for enforcement of this subpoena is substantially related to the petition for enforcement of seven administrative subpoenas *duces tecum* filed by the Resolution Trust Corporation ("RTC") in Misc. No. 91–398 because both agencies demanded similar materials and because Ernst & Young would raise many of the same objections. OTS did not object to this motion, and on January 22, 1992, the present case was transferred to the undersigned judge.

In Misc. No. 91–398, Ernst & Young raised the same objections to the RTC's subpoenas as it raises in this case with the exception of its claim that OTS lacks statutory authority to subpoena this information. In Misc. No. 91–398, the parties reached agreement on most of the issues concerning the production of documents. *See* Stipulated Order of January 29, 1992. This court, in Misc. No. 91–398, then granted the RTC's petition for summary enforcement of seven administrative subpoenas with the following conditions:

1. Petitioner shall not share any of the information produced pursuant to this order with the Office of Thrift Supervision ... until 10 days after this court rules on *Office of Thrift Supervision v. Ernst & Young*, Misc. No. 91–401.

2 Respondent shall not be required to produce any [of its own] tax returns.

3. Respondent shall not be required to produce any [of its own] financial state-

ments with the exception of those pertaining to respondent's fiscal year which ended September 30, 1991. Respondent shall produce this information within 10 days or move for a stay pending appeal.

4. Respondent shall not be required to produce liability insurance policies with the exception of those now in effect or those that would provide coverage for prior acts. Respondent shall produce this information within 10 days or move for a stay pending appeal.

5. Regarding personnel files, the court is satisfied that the presence of a criminal statute which prohibits, among other things, the theft or conversion of other records, bar disciplinary procedures and the agency's regulatory procedures will provide sufficient protection for respondent.

*Resolution Trust Corporation v. Ernst & Young*, Misc. No. 91–398 (D.D.C. Jan. 29, 1992).

Accordingly, the only issue that the court need address at this time is whether OTS has the authority to subpoena documents relating to pre-FIRREA conduct. If OTS has such authority, then its petition for enforcement shall be granted and the court shall allow the parties the opportunity to agree to conditions regarding the scope and implementation of the subpoena. The court will thereafter resolve any remaining disputes regarding scope or conditions of compliance.

### B. *Arguments*

Prior to the enactment of FIRREA, the Federal Home Loan Bank Board ("the FHLBB") was primarily responsible for regulating savings and loan associations. After experiencing significant losses in the thrift and banking industries in the 1980's, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). *See* Daniel B. Gail & Joseph H. Norton, *A Decade's Journey From "Deregulation" to "Supervisory Regulation": The Financial Institutions Reform, Recovery, and Enforcement Act of 1989*, 45 Bus.Law. 1103, 1105 (1990). FIRREA was an attempt by Congress to

remedy the regulatory failures that had occurred in the 1980's, and was designed to enable the government to both "clean up" the failed institutions and properly regulate financial institutions in the future. *See id.* Among other things, FIRREA created OTS to be responsible "for the examination, safe and sound operation, and regulation of savings associations." 12 U.S.C. § 1463(a) (1991 Supp.).

Ernst & Young asserts that one of the primary purposes of FIRREA was to expand the supervisory and enforcement powers of the agencies that are charged with regulating financial institutions. Ernst & Young alleges that FIRREA expanded this regulatory authority by giving OTS the power, for the first time, to regulate professionals or independent contractors that are associated with financial institutions, such as accountants, if they knowingly or recklessly engage in misconduct that harms an insured institution.

In essence, Ernst & Young puts forth three arguments to support their claim the OTS does not have the authority to subpoena information that was produced before FIRREA's enactment. First, Ernst & Young alleges that the FHLBB, OTS's predecessor, never had the authority to investigate and regulate accountants and thus this power was never passed on to OTS. Second, Ernst & Young asserts that even if the FHLBB had the authority to investigate and regulate accountants under pre-FIRREA law, OTS does not because the pre-FIRREA statutes were repealed by FIRREA. Third, Ernst & Young claims that any authority that OTS may have over accountants applies prospectively to cover only conduct that occurred after the enactment of FIRREA.

OTS, on the other hand, asserts that at this preliminary stage it is up to OTS as the investigative agency to determine whether it has the statutory authority to subpoena accountants, not the court. OTS states that administrative subpoenas should be enforced to allow agencies to make initial determinations regarding questions of agency jurisdiction and statutory coverage. Second, OTS alleges that it has the authority under FIRREA to issue the subpoena in question. Third, OTS claims that even before the enactment of FIRREA the FHLBB had the authority to enforce the present subpoena, and that OTS now has this authority. Finally, OTS asserts that FIRREA may be applied retroactively.

C. *Legal Conclusions*

OTS's petition to enforce the subpoena shall be granted.

1. *Scope of Judicial Review of Motions to Enforce Administrative Subpoenas*

■ It is clear that a district court's role in a proceeding to enforce an administrative subpoena is extremely limited. *Federal Trade Commission v. Texaco, Inc.,* 555 F.2d 862, 871–72 (D.C.Cir.), *cert. denied sub nom. Standard Oil Co. v. Federal Trade Commission,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977) ("*FTC v. Texaco*") (citing *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1942)). In *Endicott Johnson,* a corporation refused to comply with an administrative subpoena *duces tecum* on the ground that the agency lacked the authority to determine whether it had jurisdiction over the corporation, and the agency petitioned the court to enforce a subpoena. The United States Supreme Court held that the district court lacked the authority to determine whether the statute covered the corporation's activities when considering a petition to enforce an administrative subpoena. *Endicott Johnson,* 317 U.S. at 509–10, 63 S.Ct. at 343–44. The Court stated that this determination should be left to the agency. *Id. Accord FTC v. Texaco,* 555 F.2d at 872.

Similarly, in *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), petitioners challenged an agency's authority to seek judicial enforcement of a subpoena *duces tecum* on the grounds that the relevant statute did not cover petitioners and that the question of the statute's coverage must be adjudicated before the subpoenas may be enforced. *Id.* at 189, 66 S.Ct. at 495. The Court held that:

**50**

Congress has authorized the [agency], rather than the district courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise [its] subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey [its] subpoena, issue according to the statute's authorization, to have the aid of the district court in enforcing it.

*Id.* at 214, 66 S.Ct. at 508. *See also United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

■ In general, substantive defenses that may be raised against an administrative complaint are premature in an enforcement proceeding. *FTC v. Texaco,* 555 F.2d at 879. *See also United States v. First City National Bank of El Paso,* 598 F.2d 594, 600 (T.E.C.A.1979). As the Supreme Court stated in *Endicott Johnson,* the subject of the subpoena had:

advanced many matters that are entitled to hearing and consideration in its defense against the administrative complaint, but they are not the kind that can be accepted as a defense against the subpoena.

*Endicott Johnson,* 317 U.S. at 509, 63 S.Ct. at 343.

In *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court again affirmed the agency's ability to determine the scope of its investigative authority. The Court, however, recognized that there were limits to agencies' investigative powers. The Court held that at the enforcement stage the agency must demonstrate that: (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to that purpose; and (3) the information sought is not already within the agency's possession. *Id.* at 57–58, 85 S.Ct. at 254–55. The Court also recognized that the adversary hearing at the enforcement stage is not rendered meaningless by this ruling. *Id.* at 58, 85 S.Ct. at 255. The Court noted that the subject may "chal-lenge the summons on any appropriate ground," and that courts may inquire into the purpose of the agency's examination to assure that the court's process is not being abused. *Id.* Such an abuse, the Court held, "would take place if the summons had been issued for an improper purpose," such as to harass or pressure the subject to settle a collateral dispute, or for any purpose that may be in bad faith. *Id.* The Court noted that the burden of showing an abuse of the court's process is on the party challenging the agency's action. *Id.*

This view has been reflected by the Court of Appeals for the District of Columbia Circuit, which held that an individual or entity may not generally resist an administrative subpoena on the ground that the agency lacks jurisdiction if the subpoena is issued at the investigational stage of the proceeding. *Federal Trade Commission v. Ernstthal,* 607 F.2d 488, 490 (D.C.Cir. 1979). Likewise, the Second Circuit has held that "it has long been established" that the issue of whether an entity is covered by a regulatory statute is initially to be determined by the agency, subject to review on direct appeal, rather than for a district court whose jurisdiction is invoked upon petition to enforce an administrative subpoena. *Securities and Exchange Commission v. Wall Street Transcript Corp.,* 422 F.2d 1371, 1375 (2d Cir.), *cert. denied* 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970). This is because the agency must be free, without undue delay or interference, to investigate and develop the factual basis for determining whether the subject of the subpoena's activities comes within the agency's regulatory authority. *Securities and Exchange Commission v. Brigadoon Scotch Distributing Co.,* 480 F.2d 1047, 1053 (2d Cir.1973), *cert. denied* 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974).

■ As authority for its assertion that OTS lacks the authority to issue this subpoena, Ernst & Young cites two cases, *United States v. Newport News Shipbuilding and Dry Dock Co.,* 837 F.2d 162 (4th Cir.1988) ("*Newport News*") and *United States v. Frontier Airlines,* 563 F.2d 1008

(10th Cir.1977). The court finds that neither case is persuasive on this point.

In *Newport News*, the issue presented was whether the Defense Contract Audit Agency ("DCAA") had the power to subpoena internal audits of the defense contractor. When considering the DCAA's petition to enforce its subpoena, the Court of Appeals for the Fourth Circuit held that the DCAA lacked this authority. In reaching this conclusion, however, the Fourth Circuit did not follow the three part test enumerated in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Although the Fourth Circuit cited *Powell*, it added to the first test the requirement that the agency's inquiry be "within the authority of the agency." *Newport News*, 837 F.2d at 165. This extra phrase is not found in the Supreme Court's opinion in *Powell*. *See* 379 U.S. at 57–58, 85 S.Ct. at 254–55. Further, this added phrase is contrary to the line of Supreme Court cases discussed *supra* which hold that in the enforcement stage the district court should not inquire into whether the agency has the authority to reach that information as long as the requirements set forth in *Powell* are met. Secondly, *Newport News* is not controlling here because the Fourth Circuit may have been influenced by its determination that another agency in the Department of Defense had the authority to investigate the conduct in question. *See Newport News*, 837 F.2d at 170.

In the other case cited by Ernst & Young, *United States v. Frontier Airlines*, 563 F.2d 1008 (10th Cir.1977), the court placed the burden on the agency to demonstrate that its subpoena was within its statutory authority. Like *Newport News*, this case runs counter to the standard that has been set forth by the United States Supreme Court and the United States Court of Appeals for the District of Columbia Circuit.

### 2. *OTS Meets the Three Requirements Set Forth in Powell*

OTS meets the three requirements set forth in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Further, since Ernst & Young does not allege that OTS's subpoena represents an abuse of process or that it was issued in bad faith, the court shall grant OTS's petition to enforce the subpoena and need not reach the issue of whether OTS has the statutory authority to subpoena information from Ernst & Young that predated FIRREA. It is important to note, however, that the court does not address the issue of whether OTS may bring an administrative action against Ernst & Young based upon the information now produced.

Under FIRREA, OTS is charged with the authority to enforce the applicable statutes and regulations promulgated thereunder. 12 U.S.C. § 1464(d)(1)(A) (1991). In exercising this authority, OTS has the power to "make such examinations of the affairs of all affiliates of such savings associations as shall be necessary to disclose fully the relations between such savings associations and their affiliates and the effect of such relations upon such savings associations." *Id.* at § 1464(d)(1)(B)(i). In connection with these examinations, OTS may issue subpoenas upon such affiliates, which includes accounting firms.[1] *Id.* at § 1464(d)(1)(B)(v)(II).

From the beginning of the savings and loan crisis, some savings and loan institutions were given "clean audits" only to be declared insolvent shortly thereafter. Note, *Are the Accountants Accountable? Auditor Liability in the Savings and Loan Crisis*, 25 Ind.L.Rev. 475, 486 (1991). In fact, in the FDIC's suits against Ernst & Young for their audits of Western Savings & Loan in Dallas, Texas, the FDIC asserts

---

**1.** OTS states that at the time that the documents that are currently being subpoenaed were made, it had the power under various regulations to review and reject audits of savings associations, as well as censure any person practicing before it, or deny any person the privilege of practicing before it. *See* 12 C.F.R. § 571.2(d)(1) (1986) *recodified* at 12 C.F.R. 571.2 (1990); 12 C.F.R.

§ 513.4(a) (1984) *recodified* at 12 C.F.R. 513.4(a) (1990). While the court finds it constructive that OTS, and its predecessor agency, required savings institutions to be audited annually and that these audits be filed with OTS, *see* 12 C.F.R. § 571.2(c)(4), these regulations alone do not empower OTS to subpoena Ernst & Young.

that Western's financial statements should have indicated that Western had a negative net worth of at least $100,000,000 at the end of 1984 and a negative net worth of at least $200,000,000 at the end of 1985, yet Arthur Young (Ernst & Young's predecessor) gave "clean," unqualified opinions on the 1984 and 1985 financial statements to both Western's directors and the FSLIC. *Id.* at 486–87. Moreover, according to a General Accounting Office Report, six of the eleven audits that it examined did not "adequately audit and/or report the S & L's financial or internal control problems in accordance with professional standards." *Id.* at 489.

In the present case, the losses caused by only four of the financial institutions which OTS is investigating have been estimated to total over five-and-a-half billion dollars. OTS states that it has "considerable grounds" to believe that serious audit failures occurred at the designated institutions, and consequently began its investigation of Ernst & Young and its involvement with these institutions.

In *Lincoln Savings and Loan Ass'n. v. Wall*, 743 F.Supp. 901 (D.D.C.1990), in which Judge Sporkin of this court held that the FHLBB acted properly when it placed Lincoln Savings and Loan in receivership, the court noted that questionable accounting practices were in part responsible for the downfall of the financial institution involved in that case. The court stated that "the private sector was not willing to cooperate with the public oversight regulators," and asked:

> Where were these professionals, a number of whom are now asserting their rights under the Fifth Amendment, when these clearly improper transactions were being consummated?
>
> Why didn't any of them speak up or disassociate themselves from the transactions?
>
> Where also were the outside accountants and attorneys when these transactions were effectuated?"

*Id.* at 920. Despite these concerns, Ernst & Young vigorously resists OTS's efforts

to investigate their involvement with over twenty failed financial institutions.

The court sees no reason why OTS should not be able to investigate Ernst & Young and enforce the subpoena in this case. Accounting firms may have been responsible for many of the abuses which have led to this country's savings and loan crisis. In fact, OTS advised the court that approximately one-third of the 690 financial institutions that have failed were audited by Ernst & Young or its predecessor. Moreover, government agencies such as OTS have made, and continue to make, great efforts to hold the parties responsible for these abuses accountable and save the American taxpayers from bearing the entire financial burden of bailing out the failed financial institutions. Investigations such as this one are vital to that process, and the court will not allow parties such as Ernst & Young to avoid even being investigated.

The court shall give the parties the opportunity to agree upon conditions regarding the scope and implementation of the subpoena at issue. In *RTC v. Ernst & Young*, Misc. No. 91–398, the parties were able to reach agreement as to most of the conditions regarding the scope of RTC's seven subpoenas. It would appear that a similar agreement should be possible in this case.

### 3. *Ernst & Young's Challenges*

Ernst & Young claims that the statutes and regulations that preceded FIRREA do not empower OTS to investigate or subpoena pre-FIRREA activities. Even if the court were to consider whether OTS had the authority to subpoena this information, the court would reject Ernst & Young's claims. First, Ernst & Young asserts that any power that the FHLBB had to subpoena accountants was not transferred to OTS. Ernst & Young recognizes that the FHLBB had regulatory power over accountants [2] but alleges that these regulations were promulgated pursuant to stat-

---

**2.** *See* 12 C.F.R. §§ 571.2(d)(1) and 513.4.

utes[3] that were repealed by FIRREA.

As OTS points out, however, Section 401(h) of FIRREA states that all regulations made effective by the FHLBB and in effect on the date that FIRREA was enacted shall remain in effect and shall be enforceable by the Director of the OTS.[4] Thus, the regulations which empowered OTS to regulate accountants pre-FIRREA remained in effect after FIRREA.

Ernst & Young then claims that the FHLBB had no authority to investigate and sanction accountants, and thus any authority that was transferred to OTS did not include the power to subpoena accountants. Ernst & Young acknowledges that the FHLBB had the power to investigate a "director, officer, employee, agent, or other person participating in the conduct or affairs" of a savings institution. *See* former 12 U.S.C. §§ 1464(d) and 1730 (1988) and present 12 U.S.C. § 1464(d)(1)(A) (1991). Ernst & Young alleges, however, that "persons participating" never contemplated or included accountants because accountants were not involved in the day-to-day operation of savings associations and because the text of FIRREA refers to institution-affiliated party, which it defines as a person participating and any independent contractor. 12 U.S.C. § 1813(u)(3), (4) (1990). Ernst & Young concludes that since FIRREA added the specific reference to independent contractors and since the purpose of FIRREA was to expand the scope of the government's regulatory authority, that the earlier laws did not authorize the FHLBB to investigate and regulate accountants.

Ernst & Young, however, provides no authority for the proposition that "persons participating" before FIRREA did not include accountants. Ernst & Young only states that it is not aware of any cases involving an enforcement action by the FHLBB against an accountant. Thus, Ernst & Young is really asking the court to define OTS's jurisdiction based only upon its interpretation of what "person participating" meant under the law which preceded FIRREA. This request runs directly counter to the proposition that at the enforcement stage the district court should leave it to the agency (be it OTS or the FHLBB) to determine the scope of its authority. Further, there is no reason for the court to believe that "persons participating" did not cover accountants pre-FIRREA without any case law interpreting "persons participating." Just because FIRREA explicitly mentions accountants does not *ipso facto* mean that pre-FIRREA law did not cover accountants.

Ernst & Young's last assertion is that since OTS did not inherit the authority to investigate accountants from the FHLBB, the only way that OTS can subpoena the information sought in the present case is if FIRREA applies retroactively because the information requested predates FIRREA. Ernst & Young claims that FIRREA does not apply retroactively and concludes that OTS lacks the authority to enforce its subpoena.

Even if the court were to assume that the FHLBB lacked the authority to investigate and regulate accountants, or if the court were to believe that the FHLBB had this authority but that it was not passed on to OTS—two arguments that the court has already rejected—OTS still has the authori-

---

**3.** *See* 12 U.S.C. §§ 1726 and 1730.

**4.** Section 401 of FIRREA provides that:
all orders, resolutions, determinations, and regulations, which (1) have been issued, made, prescribed, or allowed to become effective by the [FSLIC] or the [FHLBB] (including orders, resolutions, determinations, and regulations which relate to the conduct of conservatorships and receiverships), or by a court of competent jurisdiction, in the performance of functions transferred by this Act [Pub.L. 101–73]; and (2) are in effect on the date this Act takes effect according to the terms of such orders, resolutions, determinations, and regulations and shall be enforceable against the [DOTS], the [FDIC], the [FHFB], or the [RTC], as the case may be, until modified, terminated, set aside, or superseded in accordance with applicable law by the [DOTS], the [FDIC], the [FHFB], or the [RTC], as the case may be, by any competent court of jurisdiction, or by operation of law.
*See Federal Deposit Insurance Corp. v. Claycomb*, 945 F.2d 853, 858 n. 12 (5th Cir.1991); *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 907, 913 n. 5 (3d Cir.1990).

ty under FIRREA to subpoena the information at issue here. Assuming *arguendo* that FIRREA gave OTS, for the first time, the authority to investigate and regulate accountants, OTS may apply this supposedly new found power to subpoena information that was prepared before or after the enactment of FIRREA.

Ernst & Young properly points out that statutes which apply retroactively are not favored by the law. *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). By subpoenaing information that was prepared before FIRREA's enactment, however, OTS is not applying FIRREA retroactively. Rather, OTS is merely using its present authority under the statute to subpoena information, some of which happens to have been prepared prior to 1989.

A statute is not impermissibly retroactive "merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment." *Reynolds v. United States*, 292 U.S. 443, 449, 54 S.Ct. 800, 803, 78 L.Ed. 1353 (1934). *See also Association of Accredited Cosmetology Schools v. Alexander*, 774 F.Supp. 655, 659–60 (D.D.C.1991). In a similar case, the United States Court of Appeals for the Fifth Circuit upheld a statute which reduced current food stamp benefits based on overpayments made prior to the statute's enactment. *Alexander v. Robinson*, 756 F.2d 1153 (5th Cir.1985). The Fifth Circuit held that the law applied prospectively because:

> the state is reducing the *current* benefits to offset *current* debts of food stamp recipients. The reduction in current benefits was made after ... the effective date of implementing Louisiana regulations. Such an application ... to

valid indebtedness whenever incurred is a prospective application of the statute. *Id.* at 1155 (emphasis in original).

Here, OTS is using its *current* power under FIRREA to investigate and regulate *current* costs caused by failed financial institutions. In order for its investigation to be complete and effective, OTS may deem it necessary to seek information that was in existence before the enactment of FIRREA. Contrary to Ernst & Young's claim, the fact that OTS may seek information that existed prior to the enactment of FIRREA does not mean that the statute is being applied retroactively. *See Reynolds*, 292 U.S. at 449, 54 S.Ct. at 803. Rather, OTS is using its power to subpoena Ernst & Young prospectively from the date that FIRREA was enacted, and it only happens that OTS is using this power to draw on facts that predated the statute.

Further, even if the subpoena in question were considered a retroactive application of FIRREA, such an application would be warranted by the statute. Although there is some dispute between the parties as to the Supreme Court's standard for determining whether a statute may be applied retroactively,[5] that dispute need not be settled by this court. All of the cases cited by the parties dictate that congressional intent is central to determining whether a statute may be applied retroactively. *See Bowen*, 488 U.S. at 208, 109 S.Ct. at 471; *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

In the present case, Ernst & Young took pains to demonstrate that the primary purpose of FIRREA was to expand OTS's civil enforcement authority beyond the pre-FIRREA coverage to include accountants and other institution-affiliated services. Con-

---

**5.** Ernst & Young asserts that statutes and regulations should not be applied retroactively unless their language requires such an application, citing *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471, and *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). On the other hand, OTS stated that statutes and regulations may be applied retroac-

tively unless it would result in manifest injustice, *see Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). OTS then concluded by noting the apparent conflict between *Bradley* and *Bowen* and recognizing that "where the congressional intent is clear, it governs." *Kaiser*, 494 U.S. at 837, 110 S.Ct. at 1577.

gress expanded the government's authority so that it could both regulate financial institutions in the future and investigate the past practices of financial institutions and their affiliated services that may have caused the financial institutions to fail.

In order to properly investigate bank failures, OTS must have the authority to subpoena information relating to activities that occurred before FIRREA's enactment. To hold otherwise, and follow Ernst & Young's retroactivity argument to its logical end, produces an absurd result; that OTS cannot subpoena information relating to the conduct that it was in part created to investigate.

There is another explanation for the holding that OTS's subpoena is not an impermissible retroactive application of FIRREA. The primary reason that the law does not favor retroactivity is to prevent Congress from altering substantive rights retroactively. *See e.g. Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985); *United States v. Security Industrial Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982). Here, there is no such threat because in giving OTS the power to subpoena accountants Congress did not alter Ernst & Young's substantive rights.

As authority for its claim that FIRREA does not apply retroactively, Ernst & Young points to two "statutory" provisions. Ernst & Young cites 12 U.S.C. 1786 (note) and 12 U.S.C. § 93 (note). These provisions are not persuasive for two reasons. First, they are not substantive portions of the statute. Rather they appear in the "Historical and Statutory Notes" sections that follow the substantive portions of sections 1786 and 93. The Historical and Statutory Notes sections provide readers of the United States Code Annotated with information such as cites to legislative history, references to other statutes, and effective and termination dates of the statute's amendments.

More importantly, these note sections do not address the issue of whether OTS may subpoena information that existed before the enactment of FIRREA. The note that

Ernst & Young refers to following Section 1786 appears five pages after the substantive portion of that section reads:

1989 Act. Section 903(e) of Pub.L. 101–73 provided that: "The amendments made by this section [amending subsec. 1818(g)(1) to (6) of this section and section 1818(e)(1) to (6), (f) and (g)(1) ] shall apply with respect to violations committed and activities engaged in after the date of the enactment of this Act [August 9, 1989]."

None of the sections referred to in this note deal with OTS's authority to subpoena accountants or institution-affiliated parties. Subsection (g) deals with the suspension or removal of an institution-affiliated party charged with a felony, subsection (e) goes to a banking agency's ability to remove an institution-affiliated party and prohibit their further participation in the conduct or affairs of any insured depository institution, and subsection (f) goes to a suspended or prohibited institution-affiliated party's right to apply to the proper United States district court for a stay of such suspension and/or prohibition pending the completion of the administrative proceeding.

The note referred to by Ernst & Young which follows section 93 states:

1978 Act. Section 109 of Pub.L. 95–630 provided that: "Any amendment by this title which provides for the imposition of civil penalties [enacting sections 504 and 505 of this title and amending sections 93, 1464, 1730, 1730a, 786, 1818, 1828 and 1847 of this title] shall apply only to violations occurring after the date of its enactment [November 10, 1978].

It is apparent that this note goes to the government's authority to impose civil penalties and not to the question of OTS's power to subpoena pre-FIRREA information from Ernst & Young.

III. CONCLUSION

For the reasons stated above, the court shall enforce OTS's subpoena.