Lynn MARTIN, Secretary of Labor
United States Department of
Labor, Applicant,

v.

David Joseph GARD, Jeffrey B. Wilson,
and Gregory S. Wilson,
Respondents.

No. 93–4006–SAC.

United States District Court,
D. Kansas.

Jan. 26, 1993.

Stephen G. Reynolds, Marshall J. Breger, Kansas City, MO, Evert H. Van Wijk, Office of the Sol., Kansas City, KS, Tedrick A. Housh, Jr., U.S. Dept. of Labor, Kansas City, MO, for applicant.

Thomas M. Moore, Moore & Bucher, P.C., Kansas City, MO, for respondents.

## MEMORANDUM AND ORDER

CROW, District Judge.

On July 24, 1992, a trench collapsed burying two employees of Wilson Construction, Inc. at a storm sewer construction site located in Salina, Kansas. One of the employees died from his injuries. The Secretary of Labor brings this action pursuant to Occupational and Safety and Health Act of 1970 ("Act") (29 U.S.C. § 651 *et seq.*), specifically 29 U.S.C. § 657(b), seeking an order to compel the respondents, David Joseph Gard, Jeffrey B. Wilson and Gregory S. Wilson, to appear before Mr. Homer Groves, a Compliance Safety and Health Officer with Occupational Safety and Health Administration ("OSHA"), and produce sworn testimony as required by the subpoenas served on them on January 4, 1993.

David Joseph Gard is a site superintendent for Wilson Contractors, Inc., Jeffrey B. Wilson is the president of Wilson Contractors, and Gregory S. Wilson is its secretary/treasurer and safety director. Wilson Constructors is a Kansas corporation with its principal place of business in Salina, Kansas. Wilson Constructors uses materials and supplies manufactured in other states and is engaged in business affecting commerce. It employs between 25 to 75 persons in its business. Wilson Constructors is an employer as that term is defined in the Act at 29 U.S.C. § 652(5).

The day after the fatal trench collapse, a representative of Wilson Constructors notified the Area Office of OSHA in Wichita, Kansas, of this accident. Two days later

on July 27, 1992, Homer Groves, a Compliance Safety and Health Officer ("CSHO"), travelled to Salina, Kansas, and inspected the accident site accompanied by a representative of Wilson Constructors. Mr. Groves continued his inspection and investigation of the trench collapse on a daily basis through August 4, 1992. The representatives and employees of Wilson Contractors cooperated with Mr. Groves' investigation by providing the requested documents and records, by submitting to interviews, and, in the case of David Joseph Gard, by giving a handwritten statement.

On or about September 22, 1992, Mr. Groves scheduled a closing conference with Greg Wilson. Both later attended the closing conference during which Mr. Groves advised that his report to the Area Director would recommend that several safety standards were violated on July 24, 1992. Mr. Groves gave Greg Wilson a copy of those safety standards explaining that the Area Director made the final decision whether to issue a citation. Mr. Groves told him not to expect any citation for a couple of months and if a citation were to be issued that it would be done within six months of the accident.

In December of 1992, six employees of Wilson Constructors received subpoenas to appear before the CSHO Homer Groves. Four of the six employees gave sworn statements pursuant to an examination conducted by Evert Van Wijk, an attorney in Kansas City, Missouri, with the Office of the Solicitor for the United States Department of Labor. Mr. Groves was also present during some of these sworn statements.

On January 4, 1983, the three respondents were served with subpoenas ad testificandum to appear before Homer Groves on January 8, 1993, "to testify regarding the working conditions maintained by Wilson Constructors, Inc., at the storm sewer project in Salina, Kansas, from March 1992 until the present and about Wilson Constructors, Inc." Counsel for respondents and counsel for the Secretary of Labor ("Secretary") exchanged through correspondence their respective positions and arguments over the purpose, need, and propriety of these administrative subpoenas. The court will not summarize them here, for the issues that are before the court have been framed by the Secretary's verified application and memorandum in support and the respondents' response to the order to show cause. Suffice it to say, the respondents' counsel wrote that they would not appear as requested by the subpoenas. The Secretary now asks this court to order the respondents to comply with the subpoenas.

## ACT

The declared purpose of the Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions...." 29 U.S.C. § 651(b). Towards that end, the Act obligates an employer to furnish employment and a workplace free from serious hazards to its employees and to comply with standards promulgated under the Act. 29 U.S.C. § 654(a). The Act empowers the Secretary to conduct inspections and investigations, to issue citations and to propose penalties for alleged violations. At 29 U.S.C. § 657(a), the Secretary's authority to enter, inspect and investigate places of employment is set forth:

In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any ... construction site, or other area, workplace or environment where work is performed by an employee of an employer; and (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

(emphasis added). The authority to issue citations is found at 29 U.S.C. § 658(a), which provides in pertinent part:

> If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a requirement of section 654 of this title, of any standard, rule or order promulgated ..., he shall with reasonable promptness issue a citation to the employer. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation. The Secretary may prescribe procedures for the issuance of a notice in lieu of a citation with respect to de minimis violations which have no direct or immediate relationship to safety or health.

After issuing a citation and completing his investigation or inspection, the Secretary must notify the employer of any proposed penalty to be assessed. 29 U.S.C. § 659(a).

In carrying out his authority to inspect and investigate and to issue citations upon the belief that a violation has occurred, the Secretary is given the means to compel testimony and the production of documents:

> In making his inspections and investigations under this chapter the Secretary *may require the attendance and testimony of witnesses and the production of evidence under oath.* Witnesses shall be paid the same fees and mileage that are paid witnesses in the courts of the United States.

29 U.S.C. § 657(b) (emphasis added). When the authority to compel testimony or evidence is defied, the Secretary may apply to the federal courts for an order requiring compliance under threat of contempt:

> In case of a contumacy, failure, or refusal of any person to obey such an order any district court of the United States or the United States courts of any territory or possession, within the jurisdiction of which such person is found, or resides or transacts business, upon the application by the Secretary, shall have jurisdiction to issue to such person an order requiring such person to appear to produce evidence if, as, and when so ordered, and to give testimony relating to the matter under investigation or in question, and any failure to obey such order of the court may be punished by said court as a contempt thereof.

29 U.S.C. § 657(b). By statute then, this court may compel the respondents to give sworn statements to the Secretary if (1) the respondents are found, reside or transact business in Kansas; (2) the respondents have failed or refused to obey the Secretary's subpoenas; and (3) the Secretary has filed an application for an order requiring the respondents to comply with the subpoenas. It is without issue that these statutory requirements have been satisfied.

## CASE LAW

In the exercise of their lawful investigatory powers, administrative agencies are conferred "broad discretion to require the disclosure of information concerning matters within their jurisdiction." *Phillips Petroleum Co. v. Lujan*, 951 F.2d 257, 260 (10th Cir.1991) (citations omitted). Over forty years ago, the Supreme Court described this discretion as the power of "original inquiry:"

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

*United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950). Consistent with these tenets, the Secretary of Labor is presented with subpoena powers under § 657(b) "in the broadest terms possible." *Martin v. Hammermill Paper*, 796 F.Supp. 1474, 1475 (S.D.Ala.1992). Administrative agencies, like the Department of Labor, are without the authority, however, to enforce their own subpoenas, and they must apply to the district courts for the enforcement.

█ In an action to enforce an administrative subpoena, judicial review is limited and conducted summarily. *In re Office of Inspector General*, 933 F.2d 276, 277 (5th Cir.1991); *Director of OTS v. Ernst & Young*, 786 F.Supp. 46, 49 (D.D.C.1992). An administrative subpoena is enforceable if the court determines that "[1] the inquiry is within the authority of the agency, [2] the demand is not too indefinite, and [3] the information sought is reasonably relevant" to the authorized inquiry. *U.S. v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950); *see also Dole v. Trinity Industries, Inc.*, 904 F.2d 867, 871 (3rd Cir.), *cert. denied*, ── U.S. ──, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990); *S.E.C. v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir.) ("and all administrative prerequisites have been met."[1]), *cert. denied*, 449 U.S. 955, 101 S.Ct. 362, 66 L.Ed.2d 220 (1980). Once the agency has made its threshold showing of these factors, then the court is to enforce the subpoena unless the respondent proves that the subpoena is overly broad or burdensome; *E.E.O.C. v. Maryland Cup Corp.*, 785 F.2d 471, 475–76 (4th Cir.), *cert. denied*, 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986); *E.E.O.C. v. Children's Hosp. Medical Center of Northern California*, 719 F.2d 1426, 1428 (9th Cir.1983); or that enforcement would constitute an abuse of the court's process. *U.S. v. Wilson*, 864 F.2d 1219, 1222 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989); *see U.S. v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255,

13 L.Ed.2d 112 (1964); *S.E.C. v. Blackfoot Bituminous, Inc.*, 622 F.2d at 515. An abuse of process occurs when the administrative agency is acting for an improper purpose, such as to harass or pressure settlement in a collateral matter, or any other purpose that lacks good faith. *Powell*, 379 U.S. at 58, 85 S.Ct. at 255; *Ernst & Young*, 786 F.Supp. at 50.

█ The gist of this Fourth Amendment protection is reasonableness, *Morton Salt*, 338 U.S. at 652–53, 70 S.Ct. at 368–69, in that the subpoena must be " 'sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.' " *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984) (quoting *See v. City of Seattle*, 387 U.S. 541, 544, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967) (footnote omitted)). These are the only requirements to an enforceable administrative subpoena, for when the evidence sought is "not plainly incompetent or irrelevant to any lawful purpose of the Secretary," it is "the duty of the District Court to order its production." *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943).

### Inquiry Within the Secretary's Authority

█ The respondents do not dispute that the investigation into the fatal trench accident is a proper exercise of the Secretary's authority. The Act charges the Secretary with the duty to inspect and investigate employment sites for hazardous conditions. An investigation of a fatality at the workplace is the second highest inspection priority of OSHA. 17 *Health, Education, and Welfare*, 17 Proc.L.Ed. § 42:1221 (1983) (citing Occupational Safety and Health Administration Field Operations Manual, Ch. IV–B). "In making his inspections and investigations," the Secretary is authorized to compel the "attendance and testimony of

---

**1.** Other than what can be interpreted from § 657(b), there are no other limitations in the Act on a Secretary's subpoena powers. *Martin v. Hammermill Paper*, 796 F.Supp. 1474, 1476

(S.D.Ala.1992). There are no exemptions nor prerequisites provided by statute. The respondents do not argue that the Secretary's subpoenas violate any term of § 657(b).

witnesses and the production of evidence under oath." 29 U.S.C. § 657(b).

If after reviewing the inspection report of the CSHO, the Area Director believes the employer violated a standard or requirement then a citation is issued. 29 C.F.R. § 1903.14(a). After or concurrent with the citation, the Area Director must notify the employer of a proposed penalty that is appropriate based upon considering "the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations." 29 C.F.R. § 1903.15(a), (b); *see* 29 U.S.C. § 659.

The Secretary clearly is within her authority to compel the testimony of the respondents as it relates to the ongoing investigation and inspection of the storm sewer project. The respondents are fact witnesses to the working conditions, to the safety practices of Wilson Constructors, and to other factors relevant in deciding whether a violation has occurred, what classification to give the violation, and what constitutes an appropriate penalty. Accordingly, the respondents are proper subjects of an administrative subpoena.

### Indefinite or Overbroad Request

The respondents have not challenged the Secretary's proof of this element. The subpoenas specify that the requested testimony would concern the "working conditions maintained by Wilson Constructors, Inc., at the storm sewer project in Salina, Kansas, from March 1992 until the present and about Wilson Constructors, Inc." This description limits the scope of the inquiry by time and subject. Moreover, based upon the CSHO's recent investigation of the trench accident at the storm sewer project, the respondents should have generally understood the subject, purpose and scope of the requested sworn statements. In her pleadings and arguments, the Secretary has explained the reasons for this limited inquiry now. The Secretary considers her investigation into the trench collapse to be

ongoing. Through these additional sworn statements, the Secretary seeks a better understanding of the facts before issuing what could be a citation for a serious violation and before proposing an appropriate penalty.[2] At the hearing, counsel for the Secretary advised that the inquiry would be narrow and that no more than two to three hours would be needed to complete all three sworn statements. The Secretary has shown its request is neither indefinite nor overbroad.

### Reasonably Relevant Information

The relevancy of information sought by administrative subpoenas is understood to be quite broad. If the material requested "touches a matter under investigation," then relevancy is established. *Sandsend Financial Consultants v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir.1989) (quoting *Equal Employment Opportunity Commission v. Elrod,* 674 F.2d 601, 613 (7th Cir.1982)). It is enough that the information sought is relevant to any inquiry that the administrative agency is authorized to undertake. *See, e.g., Dole v. Trinity Industries, Inc.,* 904 F.2d at 872 (The information need not be relevant to the specific inquiry but need only be relevant to any inquiry for which the Secretary is authorized to make); *Marshall v. American Olean Title Co., Inc.,* 489 F.Supp. 32, 34 (E.D.Pa.) ("If the information requested is relevant to any of the Secretary's functions and its production is not unduly burdensome, the subpoena should be enforced."), *aff'd,* 636 F.2d 1209 (3rd Cir.1980). All three respondents possess knowledge about facts and practices bearing directly on the Secretary's decisions to issue a citation, to classify the violation, and to propose the appropriate penalty.

The Secretary has carried her burden of showing that the subpoena was issued within her authority, that the demand for information was sufficiently definite, and

---

**2.** As reflected in their counsel's correspondence, the respondents fully appreciated the gravity of the Secretary's investigation and their potential liability. It is apparent that by asking for assurances and for a listing of the areas of inquiry the respondents wanted only to learn whether the most serious penalties were still being considered by the Secretary.

that the information sought was reasonably relevant to the authorized inquiry. It now becomes the respondents' task to show either that the subpoena is overly broad or burdensome or that the court's process would be abused if the subpoena were enforced.

### RESPONDENTS' CHALLENGES [3]

██ The respondents advance two general arguments. First, the Secretary's use of subpoenas in this case violates her own procedures and regulations.[4] Second, the taking of sworn statements would constitute unnecessary duplication of efforts in violation of 29 U.S.C. § 657(d). The respondents' arguments are deficient in legal authority and reasoning. Other than to develop the general proposition that an agency is obligated to follow its own regulations, the respondents do not cite cases which have denied the enforcement of an administrative subpoena for similar regulatory violations. More importantly, the court is not convinced that the respondents have even shown any violation in the Secretary's exercise of her subpoena power.

Under their first argument, the respondents contend the Secretary violated the regulations in not concluding the inspection after the closing conference on September 29, 1992. The regulations at issue are found at 29 C.F.R. § 1903.7, and read in pertinent part:

(a) Subject to the provisions of § 1903.3 inspections shall take place at such times and in such places of employment as the Area Director or the Compliance Safety and Health Officer may direct.

. . . .

(e) At the conclusion of an inspection, the Compliance Safety and Health Officer shall confer with the employer or his representative and informally advise him of any apparent safety or health violations disclosed by the inspection. During such conference, the employer shall be afforded an opportunity to bring to the attention of the Compliance Safety and Health Officer any pertinent information regarding conditions in the workplace.

(f) Inspections shall be conducted in accordance with the requirements of this part.

Homer Groves complied with this section in conducting the closing conference. The regulation does not expressly prohibit or foreclose a CSHO or other representative of the Secretary from continuing an inspection after the closing conference. *General Dynamics Corporation, Quincy Shipbuilding Division,* OSHRC Dk. No. 12212, 6 OSHC (BNA) 1753; 1978 OSHC (CCH) ¶ 22,873 (June 19, 1978), *aff'd,* 599 F.2d 453 (1st Cir.1979). The regulation simply serves to set a time for the CSHO to conduct the closing conference and to send a signal to the employer that the CSHO believes his inspection has come to an end. The regulation fully contemplates that the CSHO may continue the inspection after the closing conference, for how else could the CSHO verify and weigh the relevant information which the employer brings to the CSHO's attention at the conference. Additionally, the regulation does not pur-

---

**3.** The respondents first argue that this case is one of first impression, because it involves a subpoena ad testificandum rather than subpoena duces tecum, because the subpoena is being used during an inspection, and because the subpoena is not the result of an employer's refusal to cooperate with an investigation. That these differences may exist with some or all of the cases cited by the Secretary does not make the case *sub judice* one of first impression in any meaningful sense unless the differences significantly affect the law or its application. In this regard, the respondents have failed to show that the regulations, statutes or case law relevant here reflect, consider, or are influenced by any of these differences. For example, § 657(b) does not describe the Secretary's subpoena pow-

ers in terms of whether the subpoena is one for documents or testimony, is used during an investigation or for gathering facts in the development of standards, or is based upon the employer's refusal to cooperate. In this court's opinion, this case is not one of first impression for any of these reasons.

**4.** The respondents couch this argument in terms of a violation of their right to procedural due process under the "Accardi Doctrine." An agency's violation of a federal regulation relating to it may constitute a violation of due process. *See Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

port to limit the Area Director's discretion under § 1903.7(a) to learn more facts before deciding whether to issue a citation. Indeed, no time period is established by regulation or statute for the Secretary to exercise her administrative subpoena authority during an inspection or investigation. The use of a subpoena after the closing conference is permitted by 29 U.S.C. § 657(b) and does not violate any regulations cited by the respondents.

▮ The respondents next contend that the Secretary departs from her relevant procedures and regulations in directing one of her solicitors, instead of the assigned CSHO, to take the sworn statements. The respondents cite in support: "Compliance Safety and Health Officers shall be in charge of inspections and questioning of persons," 29 C.F.R. § 1903.8(a), and "Compliance Safety and Health Officers may consult with employees concerning matters of occupational safety and health to the extent they deem necessary for the conduct of an effective and thorough inspection," 29 C.F.R. § 1903.10. Neither regulation precludes a solicitor for the Secretary from taking a sworn statement from a subpoenaed witness. First, the decision to use compulsory process appears to reside not with the CSHO, but with the Area Director acting in consultation with the Regional Solicitor. 29 C.F.R. § 1903.4(a). Second, the authority to inspect is not limited to a designated CSHO but includes anyone authorized by the Secretary "to make inspections and to question employers and employees." 29 C.F.R. § 1903.3(a). Consequently, a solicitor assigned by the Secretary to take a sworn statement is necessarily authorized to question employers and employees. Third, the definition of CSHO, 29 C.F.R. § 1903.21(d), seems broad enough to encompass a solicitor. Fourth, even assuming the designated CSHO is in exclusive charge of the inspection, nothing

precludes the CSHO, and for that matter the Area Director, from delegating or assigning his authority to take sworn statements to another representative of the Secretary. Finally, the respondents have failed to show it would be unduly burdensome to them or an abuse of process in having the respondents give their sworn statements to a solicitor rather than the CSHO. The fact that this may appear to the respondents to be a "free round of discovery" overlooks the obvious, that is, the Secretary is granted the power to carry out her factfinding duty in a non-adversarial proceeding. *See E.E.O.C. v. Grinnell Fire Protection Systems Co.*, 764 F.Supp. 623, 626 (D.Kan.1991).

▮ The respondents also maintain the Secretary's regulations and procedures require a predicate refusal to cooperate before administrative subpoenas are used. The respondents, however, have not provided the court with a citation or copy of a regulation or procedure embodying any such requirement. Besides 29 C.F.R. § 1903.4, the court has not found a regulation regarding the use of administrative subpoenas. Section 1903.4(a) outlines what the CSHO should do when an employer or employee refuses to cooperate in an inspection, but it does not require the Secretary first to exhaust all investigation and inspection through voluntary means before issuing administrative subpoenas. The statute authorizes the full use of administrative subpoenas and imposes no condition that the information must be unavailable otherwise. Courts have struck down attempts to impose additional conditions or prerequisites to the issuance and enforcement of an administrative subpoenas.[5] For example, there is no requirement that there be an ongoing inspection or investigation before a subpoena may be used. *Donovan v. Union Packing Co. of Omaha*, 714 F.2d

5. In *Powell,* the Supreme Court required the Internal Revenue Service to prove that it did not possess the information requested in the subpoena at issue. 379 U.S. at 57–58, 85 S.Ct. at 254–55. The Tenth Circuit in *Blackfoot Bituminous* did not decide if this requirement extended to subpoenas issued by the Securities Exchange Commission. 622 F.2d at 515. This court will

follow the Tenth Circuit's lead and not decide the issue other than to note that the Secretary has shown that she does not possess sworn statements from the Wilsons. The court understands from the Secretary's counsel that the sworn statements will focus on outstanding concerns of the Area Director and will be completed within a limited period of time.

838, 840 (8th Cir.1983). Another example is that OSHA's informal policy of voluntarily conducting employee interviews does not prevent the Secretary from subpoenaing the testimony of employees. *Dole v. Bailey,* No. CA3–89–2539–D, 1990 WL 299392, 1990 U.S.Dist. LEXIS 10512 (N.D.Tex. Apr. 9, 1990). Simply said, "before any adverse action has been taken against respondents, ..., it is unnecessary and contrary to judicial precedent to require more than the safeguards mandated by *Morton Salt* and *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)." *Blackfoot Bituminous,* 622 F.2d at 515.

■ Without again citing a regulation, procedure or statute, the respondents contend the Secretary is in violation for issuing subpoenas without an accompanying explanation of why the statements are necessary. The court has found no authority for the respondents' contention. So long as the request is not too indefinite or overbroad and is reasonably relevant to the matter under inquiry, the subpoena is enforceable. All the notice and explanation that is needed was provided to the respondents in the subpoenas. The prospect of a criminal investigation and the possibility of the evidence becoming relevant in a potential criminal proceeding are not reasons to bar an administrative subpoena. *See U.S. v. Aero–Mayflower Transit Co.,* 646 F.Supp. 1467, 1471 (1986), *aff'd,* 831 F.2d 1142 (D.C.Cir.1987).

The respondents' other general attack is that the taking of their sworn statements would constitute unnecessary duplication of efforts in violation of 29 U.S.C. § 657(d). The Secretary has articulated sufficient reasons for now seeking the sworn statements. The Secretary's factfinding role would be compromised if the respondents were given the right to say when the Area Director knew enough to decide whether citations should be issued. Moreover, it would be unfair and unreasonable to both employers and the Secretary if serious citations were issued without a full development of the facts. Under these circumstances, the court does not consider it unnecessarily duplicative for the Area Director to seek additional inquiry into areas of outstanding concern or to prefer complete sworn statements over the CSHO's account of unrecorded interviews.

■ The respondents have not carried their burden of showing it would be an abuse of this court's process if the administrative subpoenas were enforced. Mere allegations are not enough to put the agency's good faith in issue, *E.E.O.C. v. Roadway Exp., Inc.,* 580 F.Supp. 1063, 1066 (W.D.Tenn.1984), or to raise a substantial question of abuse, *Blackfoot Bituminous,* 622 F.2d at 515. Nor have the respondents shown that it would be unduly burdensome to them or the employer's business if these sworn statements were taken now.

In her application, the Secretary requests an award of expenses for prosecuting this action, but she has offered no legal authority or factual basis for awarding the same. For these reasons alone, the court denies the request.

IT IS THEREFORE ORDERED that the Secretary's application for an order compelling the respondents, David Joseph Gard, Jeffrey B. Wilson and Gregory S. Wilson, to appear before Mr. Homer Groves and produce sworn testimony as required by the subpoenas served on them on January 4, 1993, is granted. The respondents and the Secretary shall agree, if possible, on the time and place for the taking of the sworn statements which must occur no later than January 22, 1993. The Secretary shall complete all three statements within three hours. Counsel for the respondents may attend and confer with his clients during the sworn statements, but he may not object or cross examine them. The Secretary's request for an award of expenses is denied.